FILED

DEC 06 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.  HI-16-1170-JuTaKu |
| | ) | |
| ONENOA FAAVEVELA FAITALIA and | ) | Bk. No.  15-00698-RJF |
| SOI FAITALIA, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| VILLAGE PARK COMMUNITY | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ONENOA FAAVEVELA FAITALIA; | ) | |
| SOI FAITALIA, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on November 17, 2016
at Pasadena, California

Filed - December 6, 2016

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Honorable Robert J. Faris, Bankruptcy Judge, Presiding

_____

Appearances:     John Winnicki, Deeley King Pang & Van Etten,
argued for appellant Village Park Community
Association; Jean Christensen and Edward Maguaran
argued for appellees Onenoa Faavevela Faitalia
and Soi Faitalia.

_____

Before:  JURY, TAYLOR, and KURTZ, Bankruptcy Judges.

JURY, Bankruptcy Judge:

Onenoa Faavevela Faitalia and Soi Faitalia (collectively, Debtors) filed a motion to value their real property for the purpose of stripping off the asserted secured claim of Village Park Community Association (Association) in their chapter 13[1] case. The bankruptcy court found that the Association's lien was wholly unsecured and entered an order granting Debtors' motion. The court also held that Debtors were entitled to their attorney's fees and costs under Hawaii law.

Debtors then filed a motion and supporting declarations seeking attorney's fees and costs under Hawaii Revised Statutes (HRS) § 514B-157, which is a reciprocal attorney fee statute pertaining to certain actions between a condominium association and its owner-members. After a hearing, the bankruptcy court found that Debtors were entitled to their fees and costs under HRS § 421J-10(a) — an analogous statute pertaining to planned community associations — and entered an order awarding Debtors $27,397.89 in attorney's fees and costs against the Association. This appeal followed. For the reasons explained below, we REVERSE.

## I.   FACTS

### A.   Prepetition Events

The Association consists of the unit owners of a planned residential community known as the Village Park Community,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

established and governed by the Declaration of Protective Covenants for Village Park Community, dated March 13, 1979 (Covenants), and located in Honolulu, Hawaii. Debtors are members of the Association based on their ownership of a home located within the Village Park Community.

The Covenants authorize and require the Association to assess and collect from its members annual membership fees and other assessments, which are personal debts and obligations of the member against whom they are assessed. If a member fails to pay the assessments of the Association when due, the Association may obtain a lien on the unit or unit owned by the member by recording a notice of lien in the Bureau of Conveyances. The lien secures the member's obligation for unpaid assessments arising before or after recordation of the lien, annual interest at twelve percent, and costs of collection including reasonable attorney's fees.

Debtors failed to pay the Association's annual membership fees for several years, which resulted in the assessment by the Association of late fees against them which also remained unpaid.[2]

In 2009, the Association assigned Debtors' debt for the delinquent assessments to the law firm of Deeley King Pang & Van Etten for collection. The law firm's collection efforts included demand letters, payment plans, and the recordation of a notice of lien. Ultimately, in October 2010, the law firm commenced a foreclosure action in the state court against

---

[2] The Association's appraisal which is part of the record shows that the monthly assessment is $11.67.

-3-

Debtors' property. In August 2011, J.P. Morgan Mortgage Acquisition (J.P. Morgan), the first trust deed holder, also commenced a foreclosure action against Debtors' property. A few months later, the state court granted the Association's motion to consolidate the foreclosure lawsuits against Debtors. J.P. Morgan did not further pursue foreclosure because it entered into a loan modification with Debtors.

On May 19, 2015, the Association filed and served a motion for default judgment, summary judgment, and for interlocutory decree of foreclosure in the circuit court foreclosure action. A declaration of indebtedness attached to the motion for summary judgment shows that Debtors owed the Association $1,168.51 as of May 11, 2015. Debtors did not respond to the motion.

**B.    Bankruptcy Events**

Instead, on June 8, 2015, Debtors filed their chapter 13 petition. In Schedule A, they listed the value of their real property at $540,000. In Schedule D, Debtors showed a secured claim against their property for $609,000 and listed $7,000 owed to the Association as disputed. Their chapter 13 plan provided for monthly payments of $380 over three years with an estimated 6.6% return to unsecured creditors.

On July 29, 2015, the Association filed a proof of claim showing a secured claim for $11,579.79, consisting of Debtors' delinquent assessments and various fees owed to the Association. The next day, the Association objected to Debtors' chapter 13 plan on the grounds that it failed to provide for payment of the Association's claim and was filed in bad faith.

One day later, Debtors filed an amended plan and a motion

-4-

to value their real property which sought to modify or strip off the Association's lien because the amount of the first priority mortgage encumbering their residence exceeded the value of the property.

The Association objected to the amended plan and motion to value on several grounds: (1) the value of the property was not supported by admissible evidence; (2) the plan was not filed in good faith; (3) the plan failed to provide for payments on the Association's claim; (4) Debtors failed to provide for payment of post-petition assessments; and (5) Debtors failed to commit all of their disposable income to plan payments.

At the confirmation hearing on September 17, 2015, the bankruptcy court scheduled the confirmation of Debtors' plan and their valuation motion for an evidentiary hearing on March 1, 2016.

In January 2016, Debtors filed a motion for summary judgment contending that the mortgage on their property ($613,419.89) exceeded the appraised value of the property ($530,000).

The Association filed an opposition to Debtors' motion and a counter motion for summary judgment. The Association requested the court to deny confirmation and dismiss Debtors' case based on bad faith. The Association further asserted that the modification of Debtors' mortgage loan was invalid and resulted in the lender's claim exceeding the value of Debtors' property. Due to the invalid modification, the Association maintained that its lien was senior to the $164,000 debt incurred through the modification and thus there was

approximately $100,000 of equity after deducting the first loan from the appraised value of $545,000. According to this argument, the Association's lien could not be stripped off. Attached to the counter motion for summary judgment was the Association's appraisal of the property showing a value of $545,000.

In opposition to the Association's counter motion, Mr. Faitalia submitted a declaration stating that Debtors had acted in good faith in filing the bankruptcy petition. He explained that the relationship with the Association had been frustrating to him since he did not understand how an annual fee of $100-$130 could turn into more than $11,000. He also declared that the stripping off of the Association's lien was permitted by law so he did not understand how that could be bad faith. Finally, in a separate pleading, Debtors maintained that the loan modification was permitted by the original mortgage documents and was not a new loan as no new money had been loaned. Rather, the additional sum of $164,000 was added to the principal and the term of the note was extended to fifty years. According to Debtors, the full amount of the principal retained priority over the Association's junior lien.

On February 16, 2016, the bankruptcy court heard the parties' cross motions for summary judgment and confirmation of Debtors' plan. Ultimately the bankruptcy accepted the Association's appraisal of $545,000 as the value of the property. The court also found that the modification of Debtors' loan (actually two modifications) added interest and unpaid monthly payments back to the mortgage and that no further

-6-

money was loaned. Accordingly, the court found that this was not the kind of modification which would allow the junior lienholder to jump up in the priority schedule.

As a result of these conclusions, the bankruptcy court granted Debtors' motion for summary judgment because there was no equity in the property after deducting amounts owed to the first trust deed holder. The court held that it was proper to treat the Association's claim as wholly unsecured. The bankruptcy court also held that Debtors, as the prevailing parties, were entitled to their attorney's fees and costs under Hawaii statutory law. Finally, the bankruptcy court concluded that under a totality of circumstances analysis, Debtors acted in good faith and thus confirmed their chapter 13 plan.

On March 9, 2016, the bankruptcy court entered the order granting Debtors' motion for summary judgment, finding the claim of the Association wholly unsecured. On March 15, 2016, the bankruptcy court entered an order granting Debtors' motion to value collateral and a separate order confirming Debtors' chapter 13 plan.

On April 7, 2016, Debtors filed a motion for attorney's fees and costs from the Association. Debtors' request was based on HRS § 514B-157, which gives unit owners the reciprocal right to collect fees and costs from an association if the claim asserted by the association was not substantiated. Debtors maintained that the sweep of the statute's reciprocity provision was broad. They further argued that their fee request was supported under the holdings in Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co., 549 U.S. 443, 445 (2007) and Hoopai v.

-7-

Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. 506, 510 (9th Cir. BAP 2007), aff'd in part & rev'd in part on other grounds, 581 F.3d 1090 (9th Cir. 2009).

Finally, Debtors relied upon the bankruptcy court's decision in In re Beck, 2014 WL 6606577 (Bankr. D. Haw. Nov. 5, 2014). In Beck, the debtor filed a motion to determine value for the purpose of stripping off the lien of the association. The bankruptcy court applied HRS § 514B-157 and awarded the debtor his attorney's fees and costs. The court reasoned that the association's proof of claim was the equivalent of an effort to collect the delinquent assessments owed by the debtor, to preserve the right to foreclose its lien, and to enforce the provisions of the condominium declaration and bylaws. Since the debtor prevailed on the lien strip motion, the bankruptcy court held that the association's lien rights were not substantiated within the meaning of the statute.

The Association opposed Debtors' request for fees, contending that the bankruptcy court wrongly decided Beck. In that regard, the Association maintained that the court incorrectly started its analysis from the premise that the association's filing of a proof of claim asserting a lien against the debtor's apartment was in effect an attempt to collect delinquent assessments within the meaning of HRS § 514B-157(a). According to the Association, even if the filing of a proof of claim could be deemed to be a collection effort, the proof of claim here was allowed — Debtors did not object to the Association's proof of claim and the Association remained entitled to collect the delinquent fees. The Association

-8-

further pointed out that its lien was not found to be invalid under state law or the provisions of the Association's lien declaration and bylaws. In short, the Association maintained that clearly there was no action to foreclose on its lien. The Association also pointed out that this proceeding, like Beck, involved the debtor's motion to value collateral and to modify the Association's lien rights under bankruptcy law. Therefore, it did not involve any claims by the Association to which HRS § 514B-157(a) applied.

Finally, the Association relied on Schmidt v. Bd. of Dirs., 836 P.2d 479 (Haw. 1992), where the Supreme Court of Hawaii declined to interpret the predecessor statute to HRS § 514B-157 so broadly. There, in interpreting the term "enforce", the court held that the statute only permitted an award of fees in an action to impose an affirmative course of action on an association by compelling obedience to any provision of its declaration, by-laws, house rules, or any enumerated provision of chapter 514A.

On May 10, 2016, the bankruptcy court heard the matter. Initially, the Association contended that HRS § 514B-157(a) and Beck did not apply because the Association was governed by HRS Chapter 241J which applied to planned communities. The Association conceded that the statutes at issue were analogous, but argued that there was a difference in the language, and on that basis asked that the case be rebriefed to address the correct section. The court declined to continue the matter and ruled at the hearing.

The bankruptcy court distinguished Schmidt, stating that it

had nothing to do with the monetary rights of the parties to collect maintenance fees or the secured status of maintenance fees, but involved a damage claim based on the condition of the property. In the end, the bankruptcy court followed its previous analysis in Beck. The court found that by filing a proof of claim the Association was taking an action to collect delinquent assessments and, in effect, to foreclose its lien, because the Association filed as a secured claimant and the Association did not have a secured claim. The bankruptcy court found that Debtors were the prevailing parties in the matter and therefore they were entitled to reasonable attorney's fees.[3] The court granted Debtors' motion and directed them to submit declarations on the amount of the attorney's fees and costs.

Thereafter, Debtors filed a declaration showing that they had paid $1,047.12 for the appraisal. Debtors' attorney also submitted a declaration and supporting time records requesting an award of attorney's fees and costs in the total amount of $27,571.89.

The Association opposed, arguing that (1) Debtors failed to establish that they agreed to pay their attorney the amounts claimed in the request; (2) the hourly rate charged by Debtors' attorney was not reasonable; (3) the amount of time expended was not reasonable; (4) the printing costs were unjustified;

---

[3] At the hearing, the Association's counsel asked the bankruptcy court to certify the decision to the Hawaii Supreme Court if it ruled that attorney's fees and costs were authorized under the statute. The bankruptcy court declined the request, concluding that it was not a "difficult" question and thus certification was unnecessary.

-10-

(5) expert witness fees were not an allowable cost; and (6) the attorney's fees and costs claimed by Debtors against the Association should be offset by the non-dischargeable, post-petition assessments for the Association's dues and fees owed by Debtors.

In a Memorandum Decision, the bankruptcy court awarded Debtors fees and costs under HRS § 421J-10, the statute applying to planned communities. The court found that the fee request was reasonable both as to the hourly rate and the time expended. The bankruptcy court disallowed the printing costs, but allowed Debtors their appraiser's fee. Finally, the bankruptcy court denied the offset request.

On May 25, 2016, the bankruptcy court entered an order granting Debtors' motion awarding $26,350.77 for attorney's fees and $1,047.00 for the appraisal as an expense. The Association filed a timely notice of appeal from that order.

On August 4, 2016, the bankruptcy court denied the Association's request for stay pending appeal without prejudice to a possible proposal for a stay pending appeal on a secured basis. The Association then sought a stay from the Panel. On August 19, 2016, the Panel denied the Association's request for a stay pending appeal without prejudice on a secured basis. On September 7, 2016, the bankruptcy court granted the Association's motion for a stay pending appeal on the condition that it post a supersedeas bond in the amount of $45,000 within one week from the date of the order. The bond was evidently posted.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err as a matter of law when it awarded Debtors attorney's fees and costs under HRS § 421J-10?

## IV. STANDARD OF REVIEW

We review the bankruptcy court's interpretation and application of a state statute governing the award of attorney's fees de novo. Kona Enters. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000).

## V. DISCUSSION

Under the "American Rule," prevailing parties in federal court are not ordinarily entitled to attorney's fees unless authorized by contract or statute. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975). This default rule applies to bankruptcy litigation, but "can, of course, be overcome by statute." Travelers, 549 U.S. at 448. Following Travelers, the question of whether parties to a bankruptcy proceeding are entitled to attorney's fees under Hawaii law is purely a question of state law. See Americredit Fin. Servs., Inc. v. Penrod (In re Penrod), 611 F.3d 1158 (9th Cir. 2015).

Here, the bankruptcy court based its award of fees and costs to Debtors on HRS § 421J-10(a), which applies to planned community associations and not, as requested by Debtors, HRS § 514B-157 which applies to condominium property. Because the Association is a planned community association, our resolution

-12-

of this case turns on the interpretation of HRS § 421J-10(a), which states:

> (a) All costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of the association for:
>
> (1) Collecting any delinquent assessments against any unit or the owner of any unit;
>
> (2) Foreclosing any lien on any unit; or
>
> (3) Enforcing any provision of the association documents or this chapter;
>
> against a member, occupant, tenant, employee of a member, or any other person who in any manner may use the property, shall be promptly paid on demand to the association by such person or persons; **provided that if the association is not the prevailing party, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to the person by the association.** The reasonableness of any attorney's fees paid by a person or by an association as a result of an action pursuant to paragraph (2) shall be determined by the court. . . . (Emphasis added.)

HRS § 421J-1.5 states that chapter 421J "shall be liberally construed to facilitate the operation of the planned community operation."

In awarding Debtors their attorney's fees and costs, the bankruptcy court reasoned that by filing a proof of claim in the bankruptcy case the Association was in essence seeking to collect its delinquent assessments or assert its right to foreclose on its lien within the meaning of HRS § 421J-10(a). From that proposition, the bankruptcy court concluded that Debtors were the prevailing parties in the valuation contest and thus were entitled to their fees and costs under the Hawaii statute. We are not persuaded by this reasoning.

As with all questions of statutory interpretation, we begin

with the plain language of the statute. Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004); Ariz. Health Care Cost Containment Sys. v. McClellan, 508 F.3d 1243, 1249 (9th Cir. 2007); State v. Wheeler, 219 P.3d 1170, 1177 (Haw. 2009). If the statute is clear, the inquiry is at its end, and we enforce the statute on its terms. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). In construing the statute, we also keep in mind that we must apply the law as we believe the Hawaii Supreme Court would apply it. Gravquick A/S v. Trimble Navigation Int'l Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003).

HRS § 421J-10(a) permits fees and expenses incurred by the Association only if the Association was "collecting" delinquent assessments, "foreclosing" on its lien, or "enforcing" its covenants. While these terms are not defined in HRS Chapter 421J, the use of these active verbs denotes some type of affirmative conduct relating to those described acts.

In Schmidt v. Bd. of Dirs., the Hawaii Supreme Court was called upon to interpret the meaning of the word "enforce" in HRS § 514A-94(b), the predecessor statute to HRS § 514B-157 and the statutory counterpart to HRS § 421J-10, applicable to condominium associations. 836 P.2d 479. There, the court adopted the plain meaning of the word "enforce" and stated that the "plain and obvious" application of HRS § 514A-94(b) is to an owner's substantiated claim against an association or its board to impose an **affirmative** course of action upon the association to put into execution - or compel obedience to - any provision of its declaration, by-laws, house rules, or any enumerated provision of HRS chapter 514A. Id. at 483.

-14-

The court noted that the Schmidts did not seek to enforce any affirmative action on the part of the Association to comply with any provision of the Association's declaration, by-laws, house rules, or HRS Chapter 514A. Rather, in their own words, they were seeking damages for the Association's failure to comply with its by-laws and declaration. Since the Schmidts did not seek to compel obedience to the Association's by-laws and declaration, the court found that HRS § 514A-94(b) did not apply to their action and reversed the award of attorney's fees.

The holding in Schmidt reinforces the conclusion that the correct interpretation of the statutory terms "collecting" (delinquent assessments) or "foreclosing" (a lien) requires some affirmative conduct against Debtors or their property. However, due to the automatic stay, once Debtors filed their petition, the Association was prohibited from affirmatively pursuing the very acts described in the statute. See § 362(a)(1), (4), and (6).

We acknowledge that as a general rule, the automatic stay does not apply to the filing of a proof of claim. See Arneson v. Farmers Ins. Exch. (In re Arneson), 282 B.R. 883, 893 (9th Cir. BAP 2002); Rein v. Providian Fin. Corp., 270 F.3d 895, 904-905 (9th Cir. 2001). Nonetheless, we are not persuaded that a creditor's proof of claim in a bankruptcy case constitutes an effort to "collect", "foreclose", or "enforce" within the meaning of HRS § 421J-10(a). The plain language of HRS § 421J-10(a) requires the "collecting" of delinquent assessments to be against Debtors or their property and "foreclosing" a lien must also be against Debtors' property. However, "the purpose for

-15-

filing a claim is not to affirmatively target [Debtors] personally or their property, but to receive distributions from the bankruptcy estate." See Clayton v. Roundup Fundings, LLC (In re Clayton), 2010 WL 4008335, at *3 (Bankr. E.D. Wash. Oct. 12, 2010) (explaining why the filing of a proof of claim did not violate the automatic stay); See also Rule 3021 (requiring distributions under plans to be made only to those creditors whose pre-petition claims are "allowed.").

We thus conclude that the mere filing of a proof of claim does not entail the affirmative acts contemplated by HRS § 421J-10(a) even under a liberal construction of the statute. It follows that the statute has no applicability under these circumstances.

Moreover, the bankruptcy court's reasoning cannot withstand scrutiny under a prevailing party analysis. "In determining which party is the prevailing party in complex litigation, Hawaiian courts focus on which party prevailed on the 'disputed main issue.'" In re Hoopai, 581 F.3d at 1102. There can be no disagreement that the disputed main issue in Debtors' valuation motion was the value of Debtors' property under § 506(a) and the amount due on the senior secured lien. The valuation of real property for purposes of lien stripping is unique to chapter 13 and federal bankruptcy law. Not surprisingly, nowhere in HRS § 421J-10(a) or Chapter 421J is there any mention of valuation for purposes of lien stripping. In short, the disputed issue upon which the bankruptcy court found Debtors to be prevailing parties is not covered by the statute.

Furthermore, Debtors never objected to the Association's

-16-

proof of claim nor did the bankruptcy court ever find that the Association's lien was invalid.  Indeed, since the Association's lien was stripped under § 506(a) for purposes of plan confirmation, if Debtors fail to complete their plan the Association's lien remains on their property under Hawaii law unless later found invalid.  In short, Debtors were not the prevailing parties in any sense.  Accordingly, the bankruptcy court erred in awarding them fees and costs on this basis.

Finally, our conclusion does no harm to the policies supporting the American Rule.  If proofs of claim were construed as the equivalent of collecting delinquent assessments or foreclosing on a lien under HRS § 421J-10(a), creditors seeking distributions from the estate would confront potential liability for attorney's fees simply because a debtor enforced his or her statutory rights under § 506(a) and successfully stripped the creditor's lien from his or her property.  One should not be penalized under a state law statue for filing a proof of claim, which is a requirement for distribution from the chapter 13 estate, nor should one be penalized for defending a valuation motion filed by a debtor who is exercising his or her statutory rights under the Bankruptcy Code.  See Kaanapali Hillside Homeowners' Ass'n, 145 P.3d at 907 (citing Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 (1967) ("[S]ince litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit. . . .")).  In short, a reciprocal compensatory remedy to either party under these circumstances is inappropriate.

In sum, we conclude that the bankruptcy court erred in

awarding Debtors their attorney's fees and costs under HRS § 421J-10(a). In light of our decision, it is unnecessary to discuss the other issues raised by the Association.

**VI.   CONCLUSION**

For the reasons stated, we REVERSE.