**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000498**
**24-SEP-2024**
**08:14 AM**
**Dkt. 75 SO**

NO. CAAP-20-0000498

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

JOEL SHAWN RAND, Plaintiff-Appellant/Cross-Appellee, v.
KEHAULANI MUNOS RAND, now known as KEHAULANI MUNOS,
Defendant-Appellee/Cross-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-D NO. 11-1-0371)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and Nakasone, JJ.)

This appeal arises out of divorce proceedings between
Plaintiff-Appellant/Cross-Appellee Joel Shawn Rand (**Joel**) and
Defendant-Appellee/Cross-Appellant Kehaulani Munos Rand, now
known as Kehaulani Munos (**Kehau**). Joel appeals from the
following orders entered by the Family Court of the Second
Circuit (**Family Court**):[1] (1) the June 22, 2020 "Findings of Fact
and Conclusions of Law" (**FOFs/COLs**); and (2) the July 22, 2020
"Stipulated Order Re: [Kehau's] Motion for Reconsideration, or to
Alter, Amend and/or Correct Clerical Error in Findings of Fact
and Conclusions of Law and Order Filed 6/22/2020" (the **Stipulated
Order**).[2]

On July 7, 2011, Joel filed a complaint for divorce
against Kehau. After a trial, on June 5, 2012, the Family Court
entered a Divorce Judgment (**Judgment**), which, among other things,

---

[1] The Honorable Michelle L. Drewyer presided.

[2] On January 28, 2021, this court entered an order approving the
parties' stipulation to dismiss Kehau's cross-appeal.

granted Joel a divorce, ordered Joel to pay Kehau alimony of $1,000 per month for a period of one year, and ordered Kehau to pay Joel an equalization payment in the amount of $45,380.89 "for the division of the parties['] marital estate." Kehau appealed.

In a summary disposition order, we vacated the Judgment in part and remanded for proceedings consistent with the order. See Rand v. Rand, No. CAAP-12-0000555, 2016 WL 383158, at *11 (Haw. App. Jan. 29, 2016). As relevant here, we vacated the Family Court's determination that Kehau must pay a $45,380.89 equalization payment to Joel because: (a) the Family Court should have valued the parties' marital assets as of the date of the conclusion of the evidentiary part of trial (**DOCOEPOT**); and (b) the Family Court erred by charging the marital estate with the debts under Joel's Morgan Stanley Smith Barney (**MSSB**[3/]) promissory notes without offsetting those notes with the payments MSSB had agreed to make under the bonus agreements between Joel and MSSB. Id. at *6-*7. We also vacated the Family Court's alimony award, directing that "the issue on remand should be limited to whether or not $1,000 per month was, as Kehau claims, insufficient." Id. at *11.

Following a trial on remand, the Family Court issued the FOFs/COLs, concluding in part that Joel owed Kehau a remaining equalization payment in the amount of $149,375 (the **Equalization Payment**), and additional alimony in the amount of $23,200. The court also ordered Joel to pay prejudgment interest to Kehau on the Equalization Payment amount at the rate of 10% per year from February 21, 2012 (the DOCOEPOT) through June 22, 2020 (the date of entry of the FOFs/COLs).[4/]

On appeal, Joel contends that the Family Court erred in concluding that: (1) Kehau was entitled to prejudgment interest on the Equalization Payment for the period from February 21, 2012, to June 22, 2020; (2) there should be no reduction in the

---

[3/]     MSSB was Joel's employer. The parties and the Family Court appear to have used the names Morgan Stanley Smith Barney, or MSSB, and Morgan Stanley interchangeably. For convenience, we use the acronym MSSB to refer to Morgan Stanley Smith Barney and all relevant associated entities.

[4/]     On July 22, 2020, the Family Court entered the Stipulated Order, which corrected a clerical error in the FOFs/COLs.

Equalization Payment as a result of Joel's final debt payment to MSSB, and his tax payments on the payments he received from MSSB, after the divorce; and (3) Kehau was entitled to additional alimony in the amount of $23,200.00.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Joel's contentions as follows, and affirm.

(1) Joel contends that the Family Court erroneously concluded that Kehau was entitled to prejudgment interest on the Equalization Payment, from February 21, 2012 (the DOCOEPOT). Relatedly, Joel challenges COLs 29 through 31.

The Family Court invoked HRS §§ 478-2 and 636-16[5] in awarding Kehau prejudgment interest on the Equalization Payment. The court reasoned:

> 28. In Roxas v. Marcos, 89 Haw. [] 91, 969 P.2d 1209 (1998), the Hawaii Supreme Court made clear that prejudgment interest is "compensatory in nature," and that the clear "implication in this court's oftrepeated characterization of prejudgment interest as 'compensatory' is that the award is meant to make the plaintiff whole with respect to delay in receiving damages to which he or she is entitled. The foregoing is the functional equivalent of the notion that prejudgment interest is designed to afford the plaintiff the approximate investment value of the damage award, which law presumes the defendant has acquired as a windfall." [Id.] at 155, 969 P.2d at 1273.

> 29. Although the law presumes that Joel acquired a windfall from the fact that he did not have to pay the equalization payment he owes Kehau to her from February 21, 2012 to the present, the likelihood of a windfall in this case is even stronger, in view of the fact that Joel, who has held Kehau's equalization payment for the past eight years, is a professional investment and wealth management advisor who is regularly engaged in the industry of financial investing and advisement.

---

[5] HRS § 478-2 (2008) states, in relevant part: "When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year . . . ."

HRS § 636-16 (2016) states:

> In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

30. Based on the foregoing, the Court concludes that an order awarding Kehau prejudgment interest from Joel on the $149,375 equalization payment owed in this case would be fair to approximate the investment value of the award, and to avoid a presumed windfall to Joel arising out of his holding of such moneys[sic] from the DOCOEPOT to the present.

31. It is just and equitable in this case, and this Court hereby concludes that prejudgment interest to Kehau on the sum of $149,375 at the statutory rate of ten percent per annum from February 21, 2012 (the DOCOEPOT) through and including the date of the entry of the Court's instant Findings of Fact, Conclusions of Law, and Order, is appropriate in this case.

Joel argues that the <u>Roxas</u> ruling on prejudgment interest does not apply to "property division matters in divorce cases[,]" which are decided under marital partnership principles, and that unlike a contract or tort case, "there is no consideration of fault and there are no damages or compensation to either party when the Family Court divides the marital estate . . . ." Joel also points to FOF 14, in which the Family Court found that Joel "did not request or cause any significant delay in the appeal or remand proceedings."

HRS § 636-16 provides that "[i]n awarding interest in <u>civil cases</u>, the judge is authorized to designate the commencement date to conform with the circumstances of each case . . . ." (Emphasis added.) <u>See</u> <u>County of Hawaiʻi v. C & J Coupe Family Ltd.</u>, 124 Hawaiʻi 281, 311, 242 P.3d 1136, 1166 (2010) ("HRS § 636-16, which applies <u>in all civil cases</u>, vests a court with discretion to award prejudgment interest." (emphasis added)). This divorce case is a civil case. Nothing in the plain language of HRS § 636-16 limits the discretion of the family court in a case such as this to award prejudgment interest, or otherwise requires a damages award as a prerequisite to a prejudgment interest award.

Similarly, the purpose of prejudgment interest does not suggest such a limitation on the family court's discretion. <u>See</u> <u>id.</u> ("[T]he purpose of prejudgment interest, in the context of HRS § 636-16, is to correct injustice when a judgment is delayed for a long period of time <u>for any reason</u>, including litigation delays, . . . and to permit more equitable results and to more speedily resolve cases[.]" (first quoting <u>County of Hawaiʻi v. C</u>

4

& J Coupe Family Ltd., 120 Hawaiʻi 400, 411, 208 P.3d 713, 724 (2009), then Wiegand v. Colbert, 68 Haw. 472, 477, 718 P.2d 1080, 1084 (1986)) (original brackets and internal quotation marks omitted; emphasis added)); Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 137, 839 P.2d 10, 36 (1992) ("The purpose of [HRS § 636-16] . . . is to allow the court to designate the commencement date of interest in order to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." (quoting Schmidt v. The Bd. of Dirs. of The Ass'n of Apartment Owners of The Marco Polo Apartments, 73 Haw. 526, 534, 836 P.2d 479, 483 (1992)) (original brackets and internal quotation marks omitted; emphasis added)); see also Morris v. Morris, 724 P.2d 527, 530 (Alaska 1986) (noting that the purposes behind prejudgment interest are applicable in divorce proceedings and holding that a trial court may, in its discretion, award prejudgment interest in such proceedings).

Here, the Family Court awarded Kehau prejudgment interest on the Equalization Payment from the DOCOEPOT, *i.e.*, the date used to value the marital property. As Kehau points out, she was denied this money (and any interest on it) for the eight years between the parties' divorce and the Family Court's final property division order. The Family Court reasoned that the prejudgment interest award "would be fair to approximate the investment value of the award, and to avoid a presumed windfall to Joel arising out of his holding of such moneys[sic] from the DOCOEPOT to the present." See HRS § 636-16 (authorizing the trial court to designate the commencement date for prejudgment interest based on "the circumstances of each case"); Morris, 724 P.2d at 530 (ruling that "[u]nder the circumstances of this case," wife's share of the marital estate became "due" on the date the trial court chose to value the parties' property). In these circumstances, we cannot say that the Family court abused its discretion in awarding prejudgment interest for the period from February 21, 2012, to June 22, 2020. COLs 29 through 31, which present mixed determinations of fact and law, are not clearly erroneous.

(2)   Joel contends that the Family Court erroneously concluded that there should be no reduction in the Equalization Payment as a result of the following payments made by Joel after the divorce:  (a) the final debt payment to MSSB under the MSSB promissory notes; and (b) tax payments on monies received from MSSB under the related MSSB bonus and retention agreements. Relatedly, Joel challenges COLs 21 and 22.

The MSSB promissory notes were part of a bonus structure in which MSSB paid monies to Joel in lump sums on the condition that Joel execute the notes in the amount of those sums.  Each year that Joel remained employed with MSSB, he would pay back a portion of the promissory notes with interest.  MSSB would then pay him back that amount, and Joel would then owe taxes on the repayment from MSSB.

The Family Court found, and Joel does not dispute, that: (1) on March 18, 2016, Joel resigned from MSSB to start his own business with two partners – for reasons unrelated to his divorce from Kehau; (2) after Joel left MSSB, he stopped receiving the payments he had been receiving from MSSB under the bonus and retention agreements, and also had to pay, on an accelerated basis, the full principal amounts that were due and owing under the promissory notes; (3) on May 24, 2016, Joel paid MSSB the sum of $104,316.00, thereby satisfying all of his note obligations to MSSB, including the two note obligations (under which Joel still owed $72,767.12 and $3,936.05) incurred during the parties' marriage; (4) after the parties' divorce, Joel paid a total of $45,809.52 in income taxes on the payments he received under the bonus and retention agreements; (5) Joel's decision to leave MSSB and form his own business was voluntary, and was made with his business partners; and (6) Joel was aware that terminating his employment with MSSB would result in some "financial pain," including the accelerated repayment of the promissory notes, but decided on balance that the benefits of this professional move outweighed the burdens.

Based on these findings, the Family Court denied Joel's request to reduce the Equalization Payment based on his post-divorce debt and tax payments.  The Family Court reasoned in

part:

> 21.   [Joel's] claim for a reduction of his equalization payment owed to [Kehau] to account for $3,936.05 and $72,767.12 for the MSSB Promissory Note obligations that became due in 5/2016, and his payment of income taxes on bonus and retention payments that he received from 2012 through 2016 is denied.
>
> 22.   Based on the foregoing, this Court concludes that Joel owed Kehau an equalization payment in the sum of $164,375.  Against this sum, Joel is entitled to a $15,000 credit representing the amount advanced by Joel to Kehau for attorney's fees ordered in response to Kehau's motion for advance of attorney's fees filed herein on 10/20/2017. Accordingly, the remaining equalization payment owed by Joel to Kehau is $149,375.

Under Hawaiʻi case law, the DOCOEPOT is the date on which marital assets should be valued for property division in a divorce.  See, e.g., LaPeter v. LaPeter, 144 Hawaiʻi 295, 306, 439 P.3d 247, 258 (App. 2019).  Joel cites no authority supporting what is essentially a request to value certain debts and assets, *i.e.*, the marital estate's debts under the MSSB promissory notes and its expected future payments under the MSSB bonus and retention agreements, based on voluntary actions taken by one of the divorced parties several years after the DOCOEPOT. The Family Court did not abuse its discretion in denying Joel's request to reduce the Equalization Payment to account for the economic consequences of professional and financial decisions that Joel voluntarily made for himself (and not Kehau) four years after the parties' divorce.  COLs 21 and 22, which present mixed determinations of fact and law, are not clearly erroneous.

(3) Joel contends that the Family Court erroneously concluded that Kehau was entitled to additional alimony in the amount of $23,200.00.  More specifically, he argues that Kehau's January 18, 2012 Income and Expense Statement included expenses for her child from a previous relationship whom Joel had no obligation to support.  Relatedly, Joel challenges, COLs 37, 39, 40 and 41.[6]

---

[6]   COLs 37, 39, 40 and 41 state:

> 37.   Contrary to Joel's assertion at trial, this Court concludes that none of the alimony awarded to Kehau in this case would constitute support of Kehau's child at that

(continued...)

7

The Family Court made extensive, detailed findings supporting its additional alimony award. Although Joel summarily challenges FOFs 88, 89.a.iv., 89.b.i., 89d.i., and 89d.ii., he presents no discernible argument as to why any of them, except FOF 89.a.iv., is clearly erroneous. "This court is not obliged to address matters for which the appellant[] ha[s] failed to present discernible arguments." Hussey v. Say, 139 Hawaiʻi 181, 191, 384 P.3d 1282, 1292 (2016) (internal quotation marks omitted) (quoting Exotics Hawaiʻi-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaiʻi 277, 288, 172 P.3d 1021, 1032 (2007)); see HRAP Rule 28(b)(7).

FOF 89.a.iv. states:

> Although [Joel] argues that [Kehau's] post-divorce shortfall of $2,934 per month should be reduced because [Kehau's] budget includes expenses for her minor child, the evidence was undisputed that none of [Kehau's] $2,934 shortfall is attributable to [Kehau's] minor child, since the portion of [Kehau's] budget that is allocated to the child's expenses ($1,145) is more than offset by the income that [Kehau] received from the child's child support and social security income ($1,311).

Joel argues that Kehau's January 18, 2012 Income and Expense Statement does not support this FOF because "clearly a portion of the housing expenses ($2,535.00) and transportation

---

6/ (...continued)
time, since the portion of Kehau's budget that was allocated to the child's expenses ($1,145) was more than offset by the income that Kehau received from the child's child support and social security income ($1,311).

. . . .

39. This Court concludes that Kehau had an unmet need over and above her income each month in the sum of $2,934 per month, that she was unable to meet her own reasonable needs, and that Joel was able to meet his own needs (as he testified at trial) at the standard of living established during the marriage, as well as meet Kehau's unmet need.

40. Pursuant to the Court's Divorce Decree, Joel paid $1,000 per month towards Kehau's unmet monthly need of $2,934 per month, leaving Kehau with a remaining unmet need in the sum of $1,934 per month.

41. Having reviewed the evidence in this case, and the statutory factors set forth in HRS Section 580-47(a), this Court concludes that it is fair and equitable to award Kehau additional alimony from Joel in the sum of $1,934 per month times 12 months, for a total additional alimony award of $23,200 payable from Joel to Kehau.

NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

expenses ($410.00) reported . . . had to be attributable to the child."  He cites no evidence in the record to support this assertion.

Based on our review of the record, we conclude that FOF 89.a.iv. is not clearly erroneous.  We further conclude that COLs 37, 39, 40 and 41, which present mixed determinations of fact and law, are not clearly erroneous, and the Family Court did not abuse its discretion in concluding that Kehau was entitled to additional alimony in the amount of $23,200.00.

For the reasons discussed above, the June 22, 2020 "Findings of Fact and Conclusions of Law" and the July 22, 2020 "Stipulated Order Re: Defendant's Motion for Reconsideration, or to Alter, Amend and/or Correct Clerical Error in Findings of Fact and Conclusions of Law and Order Filed 6/22/2020," both entered by the Family Court of the Second Circuit, are affirmed.

DATED:  Honolulu, Hawaiʻi, September 24, 2024.


On the briefs:

Charles T. Kleintop and
Naoko C. Miyamoto
(Kleintop & Luria, LLP)
for Plaintiff-Appellant/Cross-
Appellee

Steven J. Kim
(Law Office of Steven J. Kim)
for Defendant-Appellee/Cross-
Appellant

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge