FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000002
24-JUL-2020
08:24 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


STATE OF HAWAIʻI, Plaintiff-Appellee,

v.

DAVID R. LANGDON, Defendant-Appellant


NO. CAAP-19-0000002


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTI-18-149551)


JULY 24, 2020


GINOZA, CHIEF JUDGE, LEONARD and CHAN, JJ.


OPINION OF THE COURT BY CHAN, J.

Defendant-Appellant David R. Langdon (Langdon), self-represented, appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on December 19, 2018, in the District Court of the First Circuit, Honolulu Division (District Court).[1]  Langdon was found to have violated Hawaii

---

[1] The Honorable Linda K. Luke presided.

Revised Statutes (HRS) § 286-25 (Supp. 2017),[2] Operation of a vehicle or moped without a certificate of inspection, and HRS § 249-14.1 (Supp. 2017),[3] Number plates for mopeds.  On appeal,

---

[2]     HRS § 286-25 provides:

>       **§286-25  Operation of a vehicle or moped without a certificate of inspection.**  Whoever operates, permits the operation of, causes to be operated, or parks any vehicle or moped on a public highway without a current official certificate of inspection, issued under section 286-26, shall be fined not more than $100.

[3]     HRS § 249-14.1 provides:

>       **§249-14.1  Number plates for mopeds; registration; fine.**
> (a)  The director of finance shall cause to be produced number plates and tags or emblems for the registration of mopeds operated in the State.
>
>       (b)  The director of finance shall number and register the moped in the owner's name in a permanent record or book to be kept by the director of finance for this purpose, and shall furnish the owner thereof with a receipt showing upon its face the license number issued for the moped.  The registration of mopeds shall occur on a staggered basis as agreed upon by the counties' director of finance.  The registration fee shall be $27 per year.  The director of finance shall also furnish the owner, upon the original registration of the moped, one plate with the registration number marked thereon.  Upon the payment of a registration fee for each year, a tag or emblem bearing a serial number and the month and year of expiration shall be provided to the owner.  Transfer of current number plates, tag, or emblem, except as authorized by this chapter, is punishable by a fine of not more than $50 for each offense.
>
>       (c)  Upon an original registration the director of finance shall fix, and shall charge to the owner, a fee equal to the cost of the number plate and tag or emblem plus the administrative cost of furnishing the plate and tag or emblem and effecting the registration.  Upon the issuance of a new series of number plates, the director of finance shall charge the owner a fee equal to the costs of the number plate plus the administrative cost of furnishing the plate.  Upon issuing a tag or emblem, the director of finance shall charge the owner a fee of 50 cents.  The owner shall securely fasten the number plate on the rear of the moped at a location provided by the manufacturer or in the absence of such a location upon the fender of the moped and in conformance with section 291-31, in such a manner as to prevent the plate from swinging.  The number plate shall at all times be displayed entirely unobscured and be kept reasonably clean.
>
>       (d)  Upon the issuance of the tag or emblem, the owner shall affix the tag or emblem to the top right portion of the rear number plate.
>
>       (e)  An owner who fails to comply with the registration requirements of this section shall be subject to a fine not to exceed $100 per violation.

as he did below, Langdon challenges the legality of Act 200 of the 2016 Session Laws of Hawaiʻi, which enacted HRS § 249-14.1 and amended HRS § 286-25.  2016 Haw. Sess. Laws Act 200, §§ 1, 10 at 612, 615.  As explained below, we affirm the District Court's ruling that Langdon violated HRS § 286-25 and reverse the ruling that Langdon violated HRS § 249-14.1.

## I.  BACKGROUND

On July 23, 2018, Langdon was issued a citation for operating a moped without a certificate of inspection and a moped license plate, in violation of HRS §§ 286-25 and 249-14.1.  The "Officer's Observations" section of the citation stated: "Observed moped traveling W on Malia St approaching [ ] Kilauea Ave - no license plate or safety decal on moped - only decal [illegible] he didn't believe he should have to register moped b/c he should be 'grandfathered in.'"

On August 9, 2018, Langdon filed a written statement contesting the citation.  Langdon admitted that he did not have a new certificate of inspection or a new moped plate, but challenged the legality of the underlying law as applied.

After the District Court initially entered judgment in favor of the State and against Langdon for both violations, Langdon filed a Request for Trial.

On December 19, 2018, the District Court held a trial de novo and vacated the prior judgment.  Langdon was "arraigned" as follows:

> [MS. PROSECUTOR:] As to Count 1, on or about July 23rd, 2018, in the City and County of Honolulu, State of Hawaiʻi, you, David Roy Langdon, operated, permitted the operation of, caused the operation of, or parked a vehicle or moped on a public highway without a current official certificate of inspection, thereby violating section 286-25 of the Hawaiʻi Revised Statutes.
>
> As to Count 2, on or about Sep -- July 23rd, 2018, in the City and County of Honolulu, State of Hawaiʻi, you, David Roy Langdon, failed to securely fasten the number plate on the rear of the moped at a location provided by the manufacturer or in the absence of such a location upon the bumper of the moped as in conformance with section 291-31 in such a manner as to prevent the plate from swinging and

> defendant failed to display the number plate entirely
> unobscured and be kept reasonably clean in violation of
> section 249-14.1 of the Hawaiʻi Revised Statutes.

The State introduced Exhibit 1, a document by the City and County of Honolulu, Department of Customer Service Motor Vehicle Registration, certifying Langdon was the registered owner of a moped with license plate Z26629.  The exhibit was admitted without objection.

After Langdon offered his own exhibit and commented on it, the District Court apparently construed his comments and the statements made in his document as a motion to dismiss.  The District Court denied the motion.  Langdon's document was admitted into evidence as Exhibit A.  Exhibit A included a letter dated July 25, 2018, in which Langdon asserted that Act 200 of the 2016 Session Laws of Hawaiʻi was illegally applied because: (1) it was a bill of attainder and/or ex post facto law and an abridgment of constitutional protections; (2) it violated due process because it requires mopeds to obtain a safety inspection; (3) the City and County of Honolulu committed "fraud of issuance" when it previously issued to Langdon a "permanent license"; and (4) a proper interpretation of Act 200 reflects that it did not invalidate all current permanent moped registrations.  Exhibit A also included a letter dated August 14, 2017, from the City and County of Honolulu, Department of Customer Services, informing Langdon that Act 200 required annual moped registration and safety inspections and "will also invalidate all current permanent moped registrations."

Officer Jenna Lynn Shimabuku (Officer Shimabuku) testified that she is a police officer and was on duty on July 23, 2018, when she cited Langdon for not having a license plate and safety check for a moped.  She observed him on Malia Street, which is a public way, street, or highway in the City and County of Honolulu.  Langdon drew her attention because he did not have a larger license plate that was supposed to be issued by the end of 2017.  When she informed Langdon of his violations,

4

Langdon stated that he did not believe he should have to get a license plate or safety check because he should be "grandfathered in." The license decal on his moped was Z26629. The District Court approved the State's request for the record to reflect that Exhibit 1 was proof that Langdon's moped license was Z26629 and that he was the registered owner.

During his testimony, Langdon stated his various arguments challenging the legality of Act 200, as asserted in his Exhibit A. However, Langdon again admitted he did not have a new moped license plate or safety inspection.

The District Court ultimately concluded as to Count 1 that Langdon had no current safety check and as to Count 2 had not secured a new moped registration as required. On December 19, 2018, the District Court filed its Notice of Entry of Judgment and/or Order and Plea/Judgment, finding that Langdon violated HRS §§ 286-25 and 249-14.1.

## II. POINTS OF ERROR

On appeal, Langdon reasserts his arguments below challenging the legality of Act 200 of the 2016 Session Laws of Hawaiʻi. 2016 Haw. Sess. Laws Act 200, §§ 1, 10 at 612, 615. Langdon argues that Act 200 was illegal as applied and violated his rights because: (1) it was a bill of attainder and/or ex post facto law and an abridgment of constitutional protections; (2) it violated due process because it automatically deems mopeds without a safety inspection sticker to be unsafe; (3) its requirements rendered the City and County of Honolulu's previous issuance of a "permanent license" to be "fraud of issuance"; and (4) a proper interpretation of Act 200 reflects that it did not invalidate all current permanent moped registrations.

## III. STANDARDS OF REVIEW

"Statutory interpretation 'is a question of law reviewable *de novo*.'" Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawaiʻi 184, 193, 159 P.3d 143, 152 (2007) (quoting State v. Levi, 102 Hawaiʻi 282, 285, 75 P.3d 1173, 1176

(2003)). When construing statutes, this court is governed by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

Id. at 193-94, 159 P.3d at 152-53 (citations omitted).

## IV. DISCUSSION

A. Act 200 is not a bill of attainder or an ex post facto law.

Article I, Section 10, Clause 1 of the United States Constitution states: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." "A bill of attainder is a legislative act which inflicts punishment without a judicial trial." Cummings v. Missouri, 71 U.S. 277, 323 (1886). "However expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 471 (1977) (footnotes omitted).

With respect to the Ex Post Facto Clause, the United States Supreme Court has stated:

> By an ex post facto law is meant one which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required.

6

Cummings, 71 U.S. at 325-26.

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intentions to deem it civil.

Smith v. Doe, 538 U.S. 84, 92 (2003) (citations, brackets, and quotation marks omitted).

> Moreover, the Hawaiʻi Supreme Court has stated:
>
> The "intent-effects" test is applied to determine whether a statute runs afoul of the federal ex post facto clause. Russell v. Gregoire, 124 F.3d 1079, 1084 (9th Cir. 1997). That test questions whether (1) the legislature intended the statute to be criminal or civil, and (2) the statute is "'so punitive' in effect that it overcomes the nonpunitive legislative intent." Id. at 1088. "The first part of the test ('intent') looks solely to the declared purpose of the legislature as well as the structure and design of the statute." Id. at 1087. "The second part of the test ('effects') requires the party challenging the statute to provide 'the clearest proof' that the statutory scheme is so punitive either in purpose or effect as to negate the State's nonpunitive intent." Id.

State v. Guidry, 105 Hawaiʻi 222, 235, 96 P.3d 242, 255 (2004).

Violations of HRS §§ 249-14.1 and 286-25 are civil "traffic infractions" because they relate to traffic movement and control or equipment, and, therefore, cannot be criminal offenses. HRS § 291D-2 (2007); HRS § 291D-3 (2007); see State v. Rees, 107 Hawaiʻi 508, 518-19, 115 P.3d 687, 697-98 (App. 2005) (holding that a violation of HRS § 286-25 is a civil traffic infraction and not a criminal offense). A defendant may request a hearing to either "deny commission of the infraction(s) or admit commission of the infraction(s) but explain mitigating circumstances." Hawaiʻi Civil Traffic Rules (HCTR) Rule 11(a) (eff. 2006). "If the court determines that an infraction has been committed, judgment shall be entered in favor of the State." HCTR Rule 16(a) (eff. 2006). A defendant may then request a trial, which shall be held pursuant to HRS § 291D-13, the Hawaiʻi Rules of Penal Procedure, Rules of the District Court, and Hawaiʻi Rules of Evidence. HCTR Rule 19(a), (c) (eff. 2009).

7

Therefore, Act 200 of the 2016 Session Laws of Hawaiʻi, with respect to its enactment of HRS § 249-14.1 and amendment of HRS § 286-25, is not a bill of attainder because it affords a defendant the right to a trial.

The legislative intent of the relevant part of Act 200 was to establish "safety inspections and registration requirements for mopeds, as well as the issuance and use of number plates for mopeds, thereby increasing roadway safety in Hawai[ʻ]i." Conf. Comm. Rep. No. 158-16, in 2016 House Journal, at 1416, 2016 Senate Journal, at 842. Regarding the first part of the intent-effects test, the legislature deemed violations of HRS §§ 249-14.1 and 286-25 as civil proceedings and stated its intent to impose a regulatory scheme. As to the second part of the intent-effects test, Langdon failed to present any proof that the statutory scheme of either provision "is so punitive either in purpose or effect as to negate the State's nonpunitive intent." Guidry, 105 Hawaiʻi at 235, 96 P.3d at 255 (quoting Russell, 124 F.3d at 1087). Therefore, the intent-effects test was not satisfied and Act 200 is not an ex post facto law.

B.   Act 200 does not violate due process, as claimed by Langdon.

Langdon argues that Act 200 improperly imposed a safety inspection requirement upon his moped, in violation of due process, because his moped had already been deemed safe to operate without the safety inspection prior to Act 200.

Act 200 amended HRS § 286-25 to require mopeds to have a current safety inspection when operated on a public highway. 2016 Haw. Sess. Laws Act 200, § 10 at 615. The regulation of traffic upon public highways is unquestionably within the police powers of the legislature and is a rightful subject of legislation. Territory v. Tam, 36 Haw. 32, 36-37 (Haw. Terr. 1942). Contrary to Langdon's claim, no moped was deemed safe or unsafe prior to amendment of HRS § 286-25 to require mopeds to have a current safety inspection; mopeds were permitted to operate on a public highway without any determination as to their

operational fitness.  Langdon's due process argument therefore fails.

C.    Langdon's "fraud of issuance" argument is improper.

Under his "fraud of issuance" argument, Langdon contends that he purchased a moped and obtained a "permanent license," pursuant to HRS § 249-14 (2001), prior to the enactment of Act 200, which eliminated the applicability of HRS § 249-14 to mopeds.  Thus, he argues, if Act 200 invalidated his "permanent license," the City and County of Honolulu was liable for fraud for issuing the "permanent license."  Langdon's argument is essentially an improper attempt to raise an affirmative claim for fraud against the City and County of Honolulu in his traffic violation proceedings.  We therefore need not address this point.

D.    The District Court did not err in finding that Langdon violated HRS § 286-25 for operating his moped without a valid safety inspection but erred in finding that he violated HRS § 249-14.1 for failing to have a new moped license plate because there is no statutory authority for the issuance of a license plate to previously registered mopeds.

Langdon argues that Act 200 did not invalidate all current permanent moped registrations and that section 13 of the Act directed new plates be issued to him by December 31, 2017. Langdon further claims that the District Court failed to establish a clear record that he was guilty of not having the new plate and not having a safety inspection sticker.

As to Langdon's assertion of a lack of a "clear record," the record on appeal reflects that Langdon admitted at trial that he did not have a new license plate or safety inspection.  Langdon also concedes on appeal that he "did freely admit that he did not have a newly required Safety Inspection and new License plate, though he had a Permanent Moped Sticker."  On this record, the District Court did not err in finding that Langdon violated HRS § 286-25 for operating his moped without a valid safety inspection.  However, despite Langdon admitting that

he did not have a license plate, we conclude that Langdon was not required to have a license plate under HRS § 249-14.1, as discussed infra.

Section 13 of Act 200 does not stand for the proposition that Langdon seems to assert--that existing moped owners should be "grandfathered in," should be provided a "free" new license plate, and should not be subject to the new requirements imposed by Act 200. Rather, section 13 simply imposed a deadline for the issuance of license plates for "current permanent registered mopeds." 2016 Haw. Sess. Laws Act 200, § 13 at 616 ("[T]he staggering of registration and issuance of license plates for the current permanent registered mopeds shall be completed by December 31, 2017."). One of the main purposes of Act 200 was to create an annual registration requirement for mopeds. S. Stand. Comm. Rep. No. 3061, in 2016 Senate Journal, at 1318; H. Stand. Comm. Rep. No. 932-16, in 2016 House Journal, at 1073; H. Stand. Comm. Rep. No. 548-16, in 2016 House Journal, at 950; H. Stand. Comm. Rep. No. 243-16, in 2016 House Journal, at 841. In the absence of any express language or legislative intent to the contrary, owners of "current permanent registered mopeds" are also subject to the new registration requirements under HRS § 249-14.1. However, Act 200 did not adopt any statutory authority for the issuance of license plates for previously registered mopeds.

The August 14, 2017 letter from the City and County of Honolulu, Department of Customer Services, provided Langdon with instructions on the steps required to register his moped in conformity with Act 200. The issuance of a new license plate was explained in one of those steps, contingent on registration of the moped and payment of a registration fee. Although Langdon summarily states that he was not issued a license plate and relies on section 13 of Act 200 to state that this was error, there was no evidence that he took the steps necessary to receive a plate.

To the extent the August 14, 2017 letter addressed issuance of a license plate for his moped, there was no statutory authority to do so under Act 200.  Prior to Act 200, HRS § 249-14 governed the registration of mopeds similar to bicycles and contained no provision regarding issuance of license plates.  HRS § 249-14.1 currently includes the phrase "upon the original registration" when directing the director of finance to issue a moped license plate.  HRS chapter 249 does not contain a definition of "original registration" applicable to mopeds.

"Under general principles of statutory construction, courts give words their ordinary meaning unless something in the statute requires a different interpretation." Priceline.com, Inc. v. Dir. of Taxation, 144 Hawai´i 72, 87, 436 P.3d 1155, 1170 (2019) (quoting Saranillio v. Silva, 78 Hawai´i 1, 10, 889 P.2d 685, 694 (1995)).  "Thus, the fundamental starting point of statutory interpretation is the language of the statute itself." Id. (brackets and internal quotation marks omitted) (quoting State v. Alangcas, 134 Hawai´i 515, 525, 345 P.3d 181, 191 (2015)).  "Where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning."  Id. (brackets omitted) (quoting Schmidt v. Bd. of Dirs. of Ass'n of Apartment Owners of Marco Polo Apartments, 73 Haw. 526, 531-32, 836 P.2d 479, 482 (1992)).

> [A] cardinal rule of statutory construction is that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can legitimately be found which would give force to and preserve all the words of the statute[.]

Bragg v. State Farm Mut. Auto. Ins. Co., 81 Hawai´i 302, 306, 916 P.2d 1203, 1207 (1996) (internal quotation marks, citation, and original brackets omitted).  However, "it is also true that, even when strictly construing a statute, our primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree."

11

Id. (block quote format altered) (quoting Sato v. Tawata, 79 Hawaiʻi 14, 17, 897 P.2d 941, 944 (1995)).  "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality."  Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawaiʻi 309, 316, 47 P.3d 1222, 1229 (2002) (brackets and internal quotation marks omitted) (quoting Beneficial Hawaiʻi, Inc. v. Kida, 96 Hawaiʻi 289, 309, 30 P.3d 895, 914-15 (2001)).

> It is also "a canon of construction that statutes that are in pari materia may be construed together."  State v. Kamanaʻo, 118 Hawaiʻi 210, 218, 188 P.3d 724, 732 (2008) (quoting Black's Law Dictionary 806 (8th ed. 2004)).  "Thus, '[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called upon in aid to explain what is doubtful in another.'"  Id. (alteration in original) (quoting Barnett v. State, 91 Hawaiʻi 20, 31, 979 P.2d 1046, 1057 (1999)); see also HRS § 1-16 (2009).

Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 450, 420 P.3d 370, 381 (2018).

The ordinary meaning of "original" means "Preceding all others in time: First."  Webster's II New College Dictionary 792 (3d ed. 2005).  Applying the ordinary meaning of "original," HRS § 249-14.1 requires a license plate be issued when a moped is first registered.  This would not include subsequent payment of a registration fee on an annual basis.

The legislative history of Act 200 does not support an interpretation that previously registered mopeds are to be issued a license plate.  Act 200 enacted H.B. 1753 into law.  As passed by the House on its third reading, H.B. 1753, H.D. 3 proposed a section to be added to HRS chapter 249 (County Vehicular Taxes) that stated, in relevant part: "Each moped shall be issued a number plate upon payment of the initial annual registration fee pursuant to section 249-14."  H.B. 1753, H.D. 3, 28th Leg., Reg. Sess. (2016) (emphasis added).

However, in the Senate, the content of H.B. 1753, H.D. 3 was deleted and replaced with the content of S.B. 2736, S.D. 1, "a substantially similar measure[.]"  S. Stand. Comm. Rep. No.

12

3061, in 2016 Senate Journal, at 1318. Notably, by replacing the content, the Senate amended the bill to require the issuance of a number plate for a moped "upon the original registration" rather than "upon payment of the initial annual registration fee." Compare H.B. 1753, H.D. 3, S.D. 1, 28th Leg., Reg. Sess. (2016), with H.B. 1753, H.D. 3, 28th Leg., Reg. Sess. (2016). The substitution of the language is significant because it made the issuance of a license plate dependent upon the "original registration" instead of an "initial annual registration fee." The legislative history of S.B. 2736 provides no explanation for the use of the phrase "upon the original registration." However, the senate standing committee report on H.B. 1753, H.D. 3, S.D. 1 described one of the purposes of the measure as "[r]equir[ing] the Director of Finance to issue moped number plates upon payment of the initial moped and bicycle registration fee[.]" S. Stand. Comm. Rep. No. 3061, in 2016 Senate Journal, at 1318 (emphasis added). The senate standing committee report for the next Senate draft described the same purpose as "[r]equir[ing] the Director of Finance to issue a moped number plate and tag or emblem upon payment of fees[.]" S. Stand. Comm. Rep. No. 3599, in 2016 Senate Journal, at 1562 (emphasis added). The Senate draft of the bill also proposed that the new moped license plate requirement be created under HRS chapter 286 (Highway Safety). H.B. 1753, H.D. 3, S.D. 1, 28th Leg., Reg. Sess. (2016).

The conference committee report for H.B. 1753, H.D. 3, S.D. 2, C.D. 1 also did not provide an explanation for the phrase "upon the original registration." See Conf. Comm. Rep. No. 158-16, in 2016 House Journal, at 1416-17, 2016 Senate Journal, at 842. It described one of the measure's purposes as "[r]equir[ing] the issuance of a moped number plate and tag or emblem upon payment of fees[.]" Id. (emphasis added). The conference committee also expressly proposed that HRS chapter 249 was the more appropriate chapter to which the moped license plate

requirement section should be added.  Id.

The legislative history does not provide an explanation for the phrase "upon the original registration" with regards to the issuance of a number plate and we must look to other sources for guidance.

Although there is no statutory definition of "original registration" with respect to mopeds, the phrase "original registration" is used multiple times in HRS chapter 249 in relation to vehicles.  With respect to vehicles, HRS § 249-7 (2017) states:

> **§249-7  Number plates.**  (a)  Upon receipt of the tax the director of finance shall number and register the vehicle in the owner's name in a permanent record or book to be kept by the director for this purpose, and shall furnish the owner thereof with a receipt showing upon its face the license number issued for the vehicle and the fact that the license tax has been paid thereon for the whole or the remainder of the current year in which the receipt is issued.  The director of finance shall also furnish the owner, upon the original registration of the vehicle, two number plates for the vehicle or one plate in the case of trailers, semitrailers, or motorcycles with the registration number marked thereon.  Upon the payment of the tax for each year a tag or emblem bearing a serial number and the month and year of expiration shall be provided to the owner.  Transfer of current number plates, tag, or emblem, except as authorized by this chapter or by chapter 286, is punishable by a fine of not more than $50 for each offense.
>
> (b)  Upon an original registration the director of finance shall fix, and shall charge to the owner, a fee equal to the cost of the number plate and tag or emblem plus the administrative cost of furnishing the plate and tag or emblem and effecting the registration.  Upon the issuance of a new series of number plates as determined by the directors of finance of each county through majority consent, the director of finance shall charge the owner a fee equal to the costs of the number plate plus the administrative cost of furnishing the plates.  Upon issuing a tag or emblem, the director of finance shall charge the owner a fee of 50 cents.  The owner shall securely fasten the number plates on the vehicle, one on the front and the other on the rear, at a location provided by the manufacturer or in the absence of such a location upon the bumpers of the vehicle and in conformance with section 291-31, in such a manner as to prevent the plates from swinging.  Number plates shall at all times be displayed entirely unobscured and be kept reasonably clean.  In the case of trailers, semitrailers, or motorcycles, one plate shall be used and it shall be fastened to the rear thereof at a location provided by the manufacturer or in the absence of such a location at the rear thereof, and in the case of motorcycles in conformance with section 291-31.

14

(c)  Upon the issuance of the tag or emblem the owner shall affix the tag or emblem to the top right portion of the rear number plate, except that all vehicles owned by the State, any county government, any board of water supply, and official representatives of any foreign governments shall be issued registrations which need be renewed only in the new plate issue year.

(d)  After the initial payment of the tax and the original registration of a vehicle as herein specified, a motor vehicle shall not be required to be reweighed in any succeeding year unless it has been so altered or changed as to increase or diminish its weight.  No new number plates shall, however, be issued to a new owner except as provided in sections 249-7.5 and 249-8.

(e)  If an owner of a vehicle registered in any county, upon the disposition of the vehicle, requests that the license plates furnished to the owner with respect to the registration of the vehicle be assigned to another vehicle subsequently acquired by the owner, the assignment may be made by the director of finance at the director's discretion.  To defray additional administrative costs incurred by acceding to those requests, the director of finance shall charge a fee of $5 for each reassignment of license plates, in addition to the fee for registration. The procedure for registering the vehicles shall otherwise be identical with that provided by this section.

(Emphases added.)

The license plate requirements for vehicles in HRS § 249-7(a) and (b) are similar to the license plate requirement for mopeds in HRS § 249-14.1.  Given the legislature's purposeful placement of the moped license plate requirement in HRS chapter 249, see Conf. Comm. Rep. No. 158-16, in 2016 House Journal, at 1416-17, 2016 Senate Journal, at 842, and the similarity of the statutes included therein, we look to laws dealing with vehicles to explain what is doubtful in HRS § 249-14.1.

Under HRS § 249-7.5 (2017),[4] an "original registration"

---

[4]     HRS § 249-7.5 provides:

§249-7.5  **New motor vehicle with a temporary number plate**.  Any person who has purchased a new motor vehicle which has attached a temporary number plate under section 286-53 shall register the new motor vehicle in accordance with this chapter within thirty days after taking possession of the motor vehicle.  For the purposes of this chapter, the registration of such a motor vehicle shall be considered an original registration under section 249-7.  Within thirty days of the original registration of such a motor vehicle, the director of finance shall furnish two number plates and the valid tag or emblem appropriate for the year of registration,

with respect to vehicles is the registration of a newly purchased vehicle within thirty days of taking possession by the owner. HRS § 249-7.5 also requires two number plates be issued within thirty days of the "original registration."

Given the plain meaning of "original," the lack of a statutory definition of "original registration" as applied to mopeds, the lack of any discernible legislative intent about the purpose of the phrase "upon the original registration" as applied to mopeds in Act 200, and in consideration of laws in pari materia with HRS § 249-14.1 (specifically, HRS §§ 249-7 and 249-7.5), we conclude that the phrase "upon the original registration" in HRS § 249-14.1 is only applicable to newly purchased and/or first time registration of a moped. The phrase does not include previously registered mopeds that became subject to an annual registration fee pursuant to Act 200. Since there is no statutory authority for the issuance of a license plate to previously registered mopeds, Langdon could not have properly received a license plate even if he had paid an annual registration fee. The legislature could not have intended the absurd result of fining a moped owner for failing to secure a license plate to the moped when no license plate was authorized to be issued.

Because no license plate was authorized to be issued to Langdon for his previously registered moped, he was not in violation of HRS § 249-14.1 based on a failure to secure a license plate to the rear of his moped.[5]

---

if any, which shall be attached to the motor vehicle as provided under section 249-7. Upon attachment of the number plates, the temporary number plate provided under section 286-53 shall be destroyed.

(Emphasis added.)

[5] This court expresses no opinion on whether the permanent registration fee for mopeds registered pursuant to HRS § 249-14 may be modified by Act 200.

## V.   CONCLUSION

Based on the foregoing, the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on December 19, 2018, in the District Court of the First Circuit, Honolulu Division, is affirmed in part and reversed in part.  Langdon's violation of HRS § 286-25 is affirmed and his violation of HRS § 249-14.1 is reversed.

On the briefs:

Sonja P. McCullen,                    /s/ Lisa M. Ginoza
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.               /s/ Katherine G. Leonard

David R. Langdon,
Self-Represented,                     /s/ Derrick H. M. Chan
Defendant-Appellant.