**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000531
06-MAR-2023
09:50 AM
Dkt. 87 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

SARAH PENDLETON, personally and as Trustee
of the Sarah Pendleton Revocable Living Trust
dated June 3, 1994, Plaintiff-Appellee,
v.
THE ASSOCIATION OF APARTMENT OWNERS OF
KAHALA TOWERS, aka KAHALA TOWERS AOAO,
Defendant-Appellant

NO. CAAP 18-0000531

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL NO. 1RC16-1-5579)

MARCH 6, 2023

HIRAOKA, PRESIDING JUDGE, AND WADSWORTH AND McCULLEN, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

This appeal stems from a dispute between the owner of a condominium unit and the board of directors of the condominium project. In August 2016, Plaintiff-Appellee Sarah Pendleton, personally and as Trustee of the Sarah Pendleton Revocable Living Trust dated June 3, 1994 (**Pendleton**), sued Defendant-Appellant The Association of Apartment Owners of Kahala Towers aka Kahala Towers AOAO **(AOAO)** for the return of $600 in fines she had paid to AOAO earlier that year pursuant to an allegedly invalid and

unenforceable fine policy. The District Court of the First Circuit, Honolulu Division (**District Court**) entered summary judgment in Pendleton's favor on her claim to recover the $600, and subsequently awarded her attorney's fees and costs of more than $16,000.

AOAO appeals from the following judgment and orders of the District Court:

(1) the June 12, 2018 Judgment;

(2) the May 21, 2018 "Order Regarding Reduction in Attorney's Fees and Costs Awarded to [Pendleton]" (**Order Awarding Reduced Fees**);

(3) the April 18, 2018 "Order Granting . . . Pendleton's Motion to Dismiss Without Prejudice Count III of the Complaint Filed August 22, 2016, Filed March 8, 2018" (**Order Dismissing Count III Without Prejudice**);

(4) the January 22, 2018 "Order Granting in Part and Denying in Part . . . Pendleton's Motion for Summary Judgment Filed September 8, 2017" **(Order Granting in Part Pendleton's MSJ)**; and

(5) the November 25, 2016 "Order Denying . . . AOAO's Motion for Summary Judgment Filed October 14, 2016" (**Order Denying AOAO's MSJ**).[1]

AOAO contends that the District Court erred in several respects in granting summary judgment in favor of Pendleton on Count II of her complaint, in denying AOAO's motions for summary judgment, and in awarding Pendleton her attorney's fees and costs.

We hold that: (1) the District Court properly exercised jurisdiction over Count II of the complaint, which did not seek declaratory relief, but, instead, sought damages from AOAO in the amount of $600, as well as an award of attorney's fees and costs; (2) Pendleton's claims in the District Court, by which she sought to recover fines paid to AOAO in 2016 pursuant to an allegedly invalid and unenforceable fine policy, were not

---

[1]     The Honorable Michael K. Tanigawa entered the Order Granting in Part Pendleton's MSJ, the Order Awarding Reduced Fees, and the Judgment. The Honorable Hilary Benson Gangnes entered the Order Denying AOAO's MSJ and the Order Dismissing Count III Without Prejudice.

barred by the doctrines of res judicata or collateral estoppel; (3) the District Court did not abuse its discretion in granting Pendleton's motion to dismiss Count III of the complaint without prejudice, after Count III became moot; and (4) the District Court did not err thereafter in striking the hearing on AOAO's motion for summary judgment on Count III, after the motion became moot.

We further hold that the District Court did not abuse its discretion in awarding Pendleton attorney's fees under HRS § 514B-157. HRS § 514B-157(a) (2018) provides in relevant part that "if the claims upon which the association takes any action are not substantiated, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to such person or persons by the association." Based on the plain meaning of the phrase "any action" in HRS § 514B-157(a), as well as its context and purpose, we construe the phrase to mean "any action" taken by the association on its applicable claims — not just court action. Here, AOAO assessed and collected from Pendleton $600 in fines pursuant to its fine policy, *i.e.*, AOAO took actions on a claim that it had a right to assess and collect such fines under that policy. In light of the District Court's determination that the fine policy did not comply with HRS § 514B-104(a)(11), AOAO's claim was "not substantiated[,]" and Pendleton was properly awarded fees pursuant to HRS § 514B-157(a).

Accordingly, we affirm the challenged judgment and orders.

## I. Background

Kahala Towers is a condominium project located at 4300 Waialae Avenue in Honolulu. Pendleton owns a penthouse unit in the project (**Apartment** or **Unit**).

## A. Prior Circuit Court Case

On September 15, 2010, Pendleton sued AOAO in the Circuit Court of the First Circuit (**Circuit Court**) for injunctive

3

relief and damages (**Circuit Court Case**). Her complaint alleged that AOAO had interfered with her use of rooftop space adjacent to her Unit, as follows:

> 6. The [U]nit purchased by . . . Pendleton was built and sold as a unit with a private rooftop deck.
>
> 7. The AOAO wrongfully ordered . . . Pendleton to remove her personal belonging from the limited common areas adjacent to the [U]nit.
>
> 8. The AOAO and other Defendants removed walls, a locked door and grill that provided security for the [U]nit.
>
> 9. The AOAO has left incomplete repairs to the roof surface adjacent to the [U]nit rendering the deck surface unusable and subject to leaking.
>
> . . . .
>
> 13. The AOAO and other Defendants in their actions towards . . . Pendleton have violated Pendleton's right to quiet enjoyment of her property.
>
> 14. The AOAO and other Defendants have instituted a program of harassment against . . . Pendleton and singled her out for abuse and oppression.
>
> 15. The AOAO has wrongfully restricted . . . Pendleton's use of the property adjacent to her [U]nit.

Pendleton sought a variety of injunctive relief and damages, including the following:

> 1. The AOAO be restrained and enjoined from any further action that would have the effect of reducing security for . . . Pendleton's [U]nit;
>
> 2. The AOAO and other Defendants be restrained and enjoined from allowing the roof repair adjacent to . . . Pendleton's [U]nit to remain uncompleted.
>
> . . . .
>
> 4. The AOAO and other Defendants be ordered to rebuild the structures and security measures torn down and destroyed that provided security and privacy to Pendleton's [U]nit;
>
> 5. Alternatively, that comparable or higher security and privacy be afforded Pendleton's [U]nit at Defendants' cost;
>
> 6. The AOAO be restrained and enjoined from harassing . . . Pendleton;
>
> . . . .
>
> 10. That Pendleton be awarded compensatory damages in an amount to be determined;
>
> 11. That Pendleton be awarded attorney's fees, costs and other such relief as this Court deems just and proper.

It appears that as part of her alleged damages, Pendleton sought reimbursement of a City and County of Honolulu-imposed cost for obtaining a variance for an allegedly non-code-compliant door that led from her Unit to the rooftop space.

On July 29, 2014, the Circuit Court entered findings of fact, conclusions of law, and an order granting AOAO's motion for summary judgment on Pendleton's complaint. The conclusions of law included the following:

> 18. Neither the [Kahala Towers' Restated Declaration of Condominium Project Regime] nor the [Restated By-Laws of Association of Apartment Owners of Kahala Towers] designate the roof adjacent to the Apartment as a limited common element.
>
> 19. The roof adjacent to the Apartment is not a limited common element.
>
> 20. The installation of a door in the Apartment, either by Pendleton or a prior owner, adjacent to the roof area, without the Association's consent or approval, did not convert the roof area into a limited common element.
>
> . . . .
>
> 24. Paragraph 4, page 4 of the [c]omplaint requests that the Association be "ordered to rebuild the structures and security measures torn down and destroyed that provided security and privacy to Pendleton's unit . . . ." Pendleton is referring to a four-foot wall and a locked door and grill that used to be outside an unpermitted door or window of her Apartment. Because the wall and "locked door" were not part of limited common elements appurtenant to the Apartment, the Court lacks the record and legal authority to compel the Association to rebuild those structures and, therefore, Pendleton's request for a mandatory injunction is denied.
>
> . . . .
>
> 40. Pendleton seeks compensation for a lawfully imposed cost by the City and County to bring her Apartment up to code. She seeks these damages based on an anonymous complaint. Because these costs were imposed by the City and County, Pendleton cannot recover them from the Association.

(Internal record citations omitted.)

On October 27, 2014, the Circuit Court entered final judgment in AOAO's favor and against Pendleton on all claims in her complaint.

## B. Underlying District Court Case

In December 2015, AOAO's property management company notified Pendleton's counsel that Pendleton would be fined if the door in her Apartment adjacent to the roof area were not removed

5

and replaced with a louvered window.  In the ensuing weeks, AOAO repeatedly assessed fines to Pendleton's account pursuant to AOAO's Fines Enforcement Policy (**Fine Policy**), purportedly adopted on December 21, 2009.  In early February 2016, Pendleton paid a total of $600 in fines to AOAO under protest.

On August 22, 2016, Pendleton filed a three-count complaint against AOAO in the District Court (**Complaint**), initiating the case underlying this appeal.  Count I alleged facts regarding the fine dispute between AOAO and Pendleton but asserted no discernible claim for relief.  Count II alleged in relevant part:

> 24.  . . . [AOAO] adopted the "RESOLUTION ADOPTING A FINES ENFORCEMENT POLICY," . . . on or about December 21, 2009 (hereinafter, "Fine Policy").
>
> 25.  The Fine Policy does not contain any language providing that if the fine is paid, the unit owner shall have the right to initiate a dispute resolution process as provided by [Hawaii Revised Statutes (**HRS**) §§] 514B-161, 514B-162.
>
> 26.  [AOAO]'s Fine Policy does not meet the requirements of HRS 514B-104(a)(11)[2] and is, therefore, not valid or enforceable.

---

[2]     HRS § 514B-104(a)(11) (2018) provides:

> **Association; powers.**  (a)  Except as provided in section 514B-105, and subject to the provisions of the declaration and bylaws, the association, even if unincorporated, may:
>
> . . . .
>
> (11)  Impose charges and penalties, including late fees and interest, for late payment of assessments and levy reasonable fines for violations of the declaration, bylaws, rules, and regulations of the association, either in accordance with the bylaws or, if the bylaws are silent, <u>pursuant to a resolution adopted by the board that establishes a fining procedure</u> that states the basis for the fine and allows an appeal to the board of the fine with notice and an opportunity to be heard <u>and providing that if the fine is paid, the unit owner shall have the right to initiate a dispute resolution process as provided by sections 514B-161, 514B-162, or by filing a request for an administrative hearing</u> under a pilot program administered by the department of commerce and consumer affairs[.]

(Emphasis added.)

27. [AOAO]'s collection of fines against [Pendleton] pursuant to the Fine Policy, including fines related to the window/door of $600, were wrongful and illegal.

28. [Pendleton] has been damaged in an amount within the jurisdiction of this Court.

(Footnote added.) Count III alleged in part:

35. [AOAO] has assessed increasing fines against [Pendleton].

36. In levying fines against [Pendleton] without any basis, [AOAO] has violated its obligation of good faith, violated the Declaration and Bylaws of the Association of Apartment Owners of Kahala Towers, and has wronged [Pendleton].

37. Pendleton has been damaged by [AOAO]'s actions.

The Complaint sought judgment against AOAO for "all fines paid" in the amount of $600, and an award of attorney's fees and costs.

On October 14, 2016, AOAO filed a motion for summary judgment (**AOAO's MSJ**). AOAO argued that: (1) the doctrines of res judicata and collateral estoppel barred the Complaint; (2) the court lacked jurisdiction to issue declaratory rulings; and (3) Pendleton's claim for breach of the duty of good faith and fair dealing failed as a matter of law, because there was no contract between Pendleton and AOAO. On October 19, 2016, Pendleton filed a memorandum opposing AOAO's MSJ. On November 25, 2016, the District Court entered the Order Denying AOAO's MSJ.

On September 8, 2017, Pendleton filed a motion for summary judgment (**Pendleton's MSJ**). Pendleton argued in part that AOAO's Fine Policy did not comply with HRS § 514B-104(a)(11) because it did not contain any provision for an apartment owner to initiate mediation or arbitration after payment of a fine. On September 27, 2017, AOAO filed a memorandum opposing Pendleton's MSJ. AOAO contended in part that Pendleton's argument was "hypertechnical[,]" and that deeming the Fine Policy invalid because it did not explicitly mention a unit owner's rights to arbitration or mediation, when Pendleton had in fact demanded mediation, would lead to an absurd or unjust result.

7

On January 22, 2018, the District Court entered the Order Granting in Part Pendleton's MSJ. The court ruled in relevant part:

> As to [Pendleton]'s claims regarding HRS Section 514B-104(a) in Count II of the Complaint, there are no questions of fact and [Pendleton] is entitled to a judgment as a matter of law.
>
> As to [Pendleton]'s claims [in Count III of the Complaint] regarding the breach of the obligation of good faith and fair dealing, there are questions of fact that preclude summary judgment on this cause of action[.]

The District Court granted Pendleton's MSJ "as to [Pendleton's claim for $600[,]" and ordered that Pendleton "shall submit her motion for attorney's fees and costs . . . ." Accordingly, the District Court granted Pendleton's MSJ as to Count II seeking recovery of the $600 fine paid by Pendleton to AOAO, because AOAO's Fine Policy did not meet the requirements of HRS § 514B-104(a)(11).

On March 8, 2018, Pendleton filed a motion to dismiss Count III without prejudice, pursuant to District Court Rules of Civil Procedure (**DCRCP**) Rule 41(a)(2). She argued that Count III was moot, because the District Court "has already determined that the $600 claimed by . . . Pendleton should be awarded to her pursuant to Count II of the Complaint."

On April 2, 2018, AOAO filed a motion for summary judgment on Count III (**AOAO's MSJ on Count III**). AOAO argued that: (1) Count III was moot, as conceded by Pendleton; and (2) because there was no contract between Pendleton and AOAO, her claim for breach of the duty of good faith and fair dealing failed as a matter of law. On April 4, 2018, AOAO filed a memorandum in opposition to Pendleton's motion to dismiss Count III without prejudice, arguing that Count III should be dismissed with prejudice.

On April 9, 2018, the District Court heard Pendleton's motion to dismiss Count III without prejudice. Following oral argument by the parties, the court granted Pendleton's motion and struck the hearing on AOAO's MSJ on Count III as moot. On April 18, 2018, the District Court entered the Order Dismissing

Count III Without Prejudice.

On April 27, 2018, Pendleton submitted a motion for attorney's fees and costs. The motion sought attorney's fees and costs in the total amount of $20,823.39, pursuant to HRS § 514B-157(a)[3] and DCRCP Rule 54.

On May 21, 2018, the District Court entered the Order Awarding Reduced Fees. Pendleton was awarded attorney's fees in the amount of $16,109.94 under HRS § 514B-157 and costs in the amount of $65.81.

## II. Points of Error

AOAO raises five points of error on appeal,[4] contending that: (1) the District Court lacked jurisdiction to issue "declaratory rulings" on Count II of the Complaint; (2) the District Court erred in denying AOAO's MSJ based on the doctrines of res judicata and collateral estoppel; (3) the District Court abused its discretion in granting Pendleton's motion to dismiss Count III of the Complaint without prejudice;[5] (4) the District Court erred in denying AOAO's MSJ on Count III, because HRS Chapter 514B does not permit a private right of action for breach of the implied covenant of good faith and fair dealing; and (5) the District Court erred in awarding Pendleton attorney's fees and costs under HRS § 514B-157.

## III. Standards of Review

### A. Jurisdiction

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be

---

[3] HRS § 514B-157 is quoted in its entirety and discussed, infra.

[4] AOAO's points of error do not comply with HRAP Rule 28(b)(4). In particular, the points of error do not state where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the District Court. Additionally, AOAO's points of error have been reordered for organizational clarity.

[5] AOAO's related point of error refers to AOAO's "Motion to Dismiss Count III of the Complaint." It does not appear, however, that AOAO filed a motion to dismiss Count III. AOAO's related argument appears to challenge the Order Dismissing Count III Without Prejudice, which granted Pendleton's motion to dismiss Count III without prejudice.

9

> raised at any stage of a cause of action. . . . A judgment rendered by a circuit court without subject matter jurisdiction is void." <u>Amantiad v. Odum</u>, 90 Hawaiʻi 152, 159, 977 P.2d 160, 167 (1999) (citations omitted).

<u>Ocean Resort Villas Vacation Owners Ass'n v. Cnty. of Maui</u>, 147 Hawaiʻi 544, 552, 465 P.3d 991, 999 (2020).

**B.    Summary Judgment**

> An appellate court reviews a trial court's grant or denial of summary judgment de novo using the same standard applied by the trial court. <u>Nozawa v. Operating Eng'rs Local Union No. 3</u>, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018) (citing <u>Adams v. CDM Media USA, Inc.</u>, 135 Hawaiʻi 1, 12, 346 P.3d 70, 81 (2015)). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Id.</u> at 342, 418 P.3d at 1198 (quoting <u>Adams</u>, 135 Hawaiʻi at 12, 346 P.3d at 81) (brackets omitted).

<u>Jacobs v. Billy Casper Golf, LLC</u>, 150 Hawaiʻi 289, 293, 500 P.3d 474, 478 (App. 2021).

**C.    Res Judicata and Collateral Estoppel**

Application of the doctrines of res judicata or collateral estoppel is a question of law. Questions of law are reviewed de novo under the right/wrong standard. <u>See</u> <u>PennyMac Corp. v. Godinez</u>, 148 Hawaiʻi 323, 327, 474 P.3d 264, 268 (2020); <u>Eastern Sav. Bank, FSB v. Esteban</u>, 129 Hawaiʻi 154, 157-58, 296 P.3d 1062, 1065-66 (2013).

**D.    Dismissal Under DCRCP Rule 41(a)(2)**

DCRCP Rule 41(a)(2) provides in relevant part that "[e]xcept [by stipulation], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." The rule thus "vests in the trial court the discretion to deny the motion or grant it upon 'such terms and conditions as the court deems proper.'" <u>Sapp v. Wong</u>, 3 Haw. App. 509, 512, 654 P.2d 883, 885 (1982) (applying the identical circuit court counterpart, Hawaiʻi Rules of Civil Procedure Rule 41(a)(2)). "[T]he court's order is reviewable only for an abuse of discretion." <u>Id.</u> (citing 5 Moore's Federal Practice ¶ 41.05(1), pp. 41-58).

## E.   Attorney's Fees

An appellate court reviews a trial court's grant or denial of attorney's fees and costs under the abuse of discretion standard.  See Gailliard v. Rawsthorne, 150 Hawaiʻi 169, 175, 498 P.3d 700, 706 (2021).  "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Oahu Publ'ns, Inc. v. Abercrombie, 134 Hawaiʻi 16, 22, 332 P.3d 159, 165 (2014) (brackets omitted) (quoting Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 30, 79 P.3d 119, 123 (2003)).

## F.   Statutory Interpretation

"The interpretation of a statute is a question of law reviewable de novo." American Savings Bank, F.S.B. v. Chan, 146 Hawaiʻi 94, 102, 456 P.3d 167, 175 (2020).

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Id. (quoting Ka Paʻakai O Kaʻaina v. Land Use Comm'n, 94 Hawaiʻi 31, 41, 7 P.3d 1068, 1078 (2000)).

## IV. Discussion

## A.   Jurisdiction Over Count II

AOAO contends that Count II of Pendleton's Complaint sought declaratory relief, and pursuant to HRS § 632-1(a) (2016),[6/] "declaratory relief may not be obtained in any district

---

[6/]    HRS § 632-1(a) provides:

> **§ 632-1  Jurisdiction; controversies subject to.**  (a) In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided that declaratory relief may not be obtained in any district court, or in any controversy
>
> (continued...)

11

court[.]"  AOAO argues that declaratory relief includes "controversies involving the interpretation of . . . other instruments of writing" and "[t]he only way the [D]istrict [C]ourt could agree with Pendleton and invalidate the Fine Enforcement Policy was to resolve a controversy over the interpretation of a writing[.]"

AOAO's argument lacks merit.  Count II of the Complaint alleged that AOAO's Fine Policy did not meet the requirements of HRS 514B-104(a)(11), the AOAO's collection of $600 in fines from Pendleton was thus illegal, and Pendleton incurred resulting damages.  Neither Count II nor the prayer of the Complaint sought declaratory relief.  Rather, the prayer sought judgment against AOAO for "all fines paid" in the amount of $600, and an award of attorney's fees and costs.

Accordingly, the District Court properly exercised jurisdiction over Count II and did not err on that basis in entering the Order Granting in Part Pendleton's MSJ.

**B.  Res Judicata and Collateral Estoppel**

AOAO contends that Pendleton's claims in the District Court were barred by res judicata and collateral estoppel.  AOAO appears to argue that Pendleton is trying to re-litigate "[her] contention that the door was an appropriate alteration of the Apartment" – an issue that was litigated or could have been litigated in the prior Circuit Court Case.

Res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are legal doctrines that limit a party to one opportunity to litigate aspects of a case, in order to prevent inconsistent results among multiple suits and to promote finality and judicial economy.  See Bremer v. Weeks, 104

_____

(...continued)
with respect to taxes, or in any case where a divorce or annulment of marriage is sought.  Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

(Emphasis added.)

Hawaiʻi 43, 53, 85 P.3d 150, 160 (2004). Claim preclusion "prohibits a party from relitigating a previously adjudicated cause of action." Id. (quoting Dorrance v. Lee, 90 Hawaiʻi 143, 148, 976 P.2d 904, 909 (1999)). The party asserting claim preclusion has the burden of establishing that: (1) there was a final judgment on the merits; (2) the parties to the action in question are the same or in privity with the parties in the original suit; and (3) the claim decided in the original suit is identical to the one presented in the action in question. Id. at 54, 85 P.3d at 161.

Issue preclusion "applies to a subsequent suit between the parties or their privies on a different cause of action and prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action." Id. (quoting Dorrance, 90 Hawaiʻi at 148, 976 P.2d at 910). The party asserting issue preclusion must establish that: (1) there was a final judgment on the merits; (2) the party against whom issue preclusion is asserted was a party or in privity with a party to the original suit; (3) the issue decided in the original suit is identical to the one presented in the action in question; and (4) the issue decided in the original suit was essential to the final judgment. Id. (quoting Dorrance, 90 Hawaiʻi at 149, 976 P.2d at 911).

Here, as to AOAO's claim preclusion defense, there is no dispute that there was a final judgment on the merits in the prior Circuit Court Case, and the parties in that case and the present case are the same. The issue is whether the claims decided in the Circuit Court Case are identical to those raised in the present case. We conclude they are not.

In the prior Circuit Court Case, the complaint alleged that AOAO had interfered with Pendleton's use of the rooftop area adjacent to her Apartment by ordering her to remove her belongings; by removing walls, a locked gate, and a grill that provided security for the unit; and by making incomplete repairs to the roof that had rendered the deck surface unusable. Pendleton sought a variety of injunctive relief, including that AOAO be restrained from taking any further action that would

13

reduce the security of her Apartment, be enjoined from allowing the roof repair to remain uncompleted, and be ordered to rebuild the structures and security measures that had been removed or to afford her unit with "comparable or higher security and privacy." Pendleton also sought monetary damages.

In awarding AOAO summary judgment in 2014, the Circuit Court concluded that the rooftop area was not a limited common element appurtenant to Pendleton's Apartment; the installation of the door in the Apartment adjacent to the roof area, without AOAO's consent or approval, did not convert the roof area into a limited common element; and Pendleton was not entitled to the requested injunctive relief or monetary damages.

In contrast, the present case relates to AOAO's assessment and collection of fines from Pendleton – more than a year after entry of judgment in the Circuit Court Case – pursuant to the allegedly defective Fine Policy. In her Complaint, Pendleton did not seek declaratory relief, and she did not seek damages based on the claims presented or decided in the prior Circuit Court Case. Rather, in the present case, Pendleton sought to recover the $600 in fines she had paid to AOAO in 2016 pursuant to the Fine Policy. Pendleton's claim to recover those monies not only <u>was</u> <u>not</u> litigated, but <u>could</u> <u>not</u> have been litigated, in the Circuit Court Case, which ended in 2014.

Because the claims decided in the Circuit Court Case are not identical to those presented in the present case, claim preclusion did not bar those claims, and the District Court did not err in denying AOAO's MSJ based on claim preclusion.

As to AOAO's issue preclusion defense, AOAO similarly failed to show that any issue decided in the Circuit Court Case was identical to one presented in the present action. Accordingly, the District Court did not err in denying AOAO's MSJ based on issue preclusion.[7]

---

[7]     In the opening brief, in the middle of its res judicata/collateral estoppel argument, AOAO also appears to argue that the Fine Policy complied with HRS § 514B-104(a)(11). Because this argument is not the subject of any of AOAO's identified points of error, it is disregarded. <u>See</u> HRAP Rule 28(b)(4). In any event, the District Court did not err in concluding that the Fine Policy, which indisputably failed to "provid[e] that if the fine is paid,
(continued...)

## C.    Dismissal of Count III Without Prejudice

AOAO contends that the District Court abused its discretion in granting Pendleton's motion to dismiss Count III of the Complaint without prejudice pursuant to DCRCP Rule 41(a)(2). AOAO argues that the sole purpose of Pendleton's motion was to avoid a potential adverse ruling so as to preserve a claim for attorney's fees against AOAO.

The record does not support AOAO's argument.  In the Order Granting in Part Pendleton's MSJ, the District Court granted summary judgment in favor of Pendleton on Count II of the Complaint, which sought judgment in the amount of $600 for the fines she had paid to AOAO pursuant to the defective Fine Policy. Thereafter, Pendleton moved under DCRCP Rule 41(a)(2) to dismiss Count III of the Complaint, which sought the same $600 sum under an alternative legal theory, without prejudice, on the ground that Count III was now moot.  Although AOAO subsequently filed its MSJ on Count III, that motion was not pending when Pendleton filed her motion to dismiss Count III without prejudice.  AOAO thus provided no support for its assertion below (and on appeal) that the sole purpose of Pendleton's motion was to avoid a potential adverse ruling so as to preserve a claim for attorney's fees.

AOAO did not otherwise show that it would suffer some "plain legal prejudice" as a result of the dismissal of Count III without prejudice.  Smith v. Lenches, 263 F.3d 972, 976 (9th Cir. 2001) (construing analogous federal rule).  Accordingly, the District Court did not abuse its discretion in granting Pendleton's motion to dismiss Count III without prejudice.

---

[7] (...continued)
the unit owner shall have the right to initiate a dispute resolution process as provided by [HRS §§] 514B-161, 514B-162," did not comply with the plain language of HRS § 514B-104(a)(11).

**D.   Denial of Motion for Summary Judgment on Count III**

AOAO contends that the District Court erred in denying AOAO's MSJ on Count III, because HRS Chapter 514B[8/] does not permit a private right of action for breach of the implied covenant of good faith and fair dealing.[9/]

However, the District Court did not explicitly deny AOAO's MSJ on Count III.  Rather, after granting Pendleton's motion to dismiss Count III without prejudice, the District Court struck the hearing on AOAO's MSJ on Count III as moot.  Indeed, the latter motion was moot, and AOAO does not argue otherwise. To the extent that AOAO challenges the District Court's Order Dismissing Count III Without Prejudice, that argument is addressed above in section C.

Furthermore, AOAO does not indicate how and where it raised the argument that HRS Chapter 514B does not permit a private right of action for breach of the implied covenant of good faith and fair dealing.  See HRAP Rule 28(b)(4), (7).  In AOAO's MSJ on Count III, AOAO summarily argued that there was no contract between Pendleton and AOAO, and her claim for breach of the duty of good faith and fair dealing thus failed as a matter of law.[10/]  AOAO's MSJ on Count III did not include any argument

---

[8/]     HRS § 514B-9 (2018) provides:

> **Obligation of good faith**.  Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement.

[9/]     AOAO filed two motions for summary judgment that addressed Count III – AOAO's MSJ, filed on October 14, 2016, and AOAO's MSJ on Count III, filed on April 2, 2018.  The Order Denying AOAO's MSJ, filed on November 25, 2016, denied the motion and ordered the parties to engage in mediation.  AOAO makes no discernible argument challenging that ruling in its opening brief; any such argument is thus deemed waived.  See HRAP Rule 28(b)(7).  Instead, AOAO argues that the District Court wrongly denied its later MSJ on Count III "without comment."

[10/]     AOAO argues on appeal that the Declaration and Bylaws of the Association of Apartment Owners of Kahala Towers did not create a contractual relationship between Pendleton and AOAO.  Because this argument is not the subject of any of AOAO's identified points of error, it is disregarded.  See HRAP Rule 28(b)(4).  In any event, the supreme court has recognized that "[g]enerally, the declaration and bylaws of a condominium serve as a contract between the condominium owners and the association, establishing the rules governing the condominium."  Harrison v. Casa De Emdeko, Inc., 142 Hawaiʻi 218, 226, 418 P.3d 559, 567 (2018) (citing Ass'n of Apt. Owners of Maalaea
(continued...)

16

regarding a private right of action.  The issue is thus deemed waived.  See Cnty. of Hawaii v. C & J Coupe Family Ltd. P'ship, 119 Hawaiʻi 352, 373, 198 P.3d 615, 636 (2008); HRAP Rule 28(b)(4)(iii).

## E.    Attorney's Fees and Costs

AOAO contends that the District Court wrongly awarded attorney's fees and costs to Pendleton pursuant to HRS § 514B-157.

During the relevant period, HRS § 514B-157 provided:

> **Attorneys' fees, delinquent assessments, and expenses of enforcement.**  (a)  All costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of the association for:
>
> > (1)    Collecting any delinquent assessments against any owner's unit;
> >
> > (2)    Foreclosing any lien thereon; or
> >
> > (3)    Enforcing any provision of the declaration, bylaws, house rules, and this chapter, or the rules of the real estate commission;
>
> against an owner, occupant, tenant, employee of an owner, or any other person who may in any manner use the property, shall be promptly paid on demand to the association by such person or persons; provided that if the claims upon which the association takes any action are not substantiated, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to such person or persons by the association.
>
> (b)  If any claim by an owner is substantiated in any action against an association, any of its officers or directors, or its board to enforce any provision of the declaration, bylaws, house rules, or this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an owner shall be awarded to such owner; provided that no such award shall be made in any derivative action unless:
>
> > (1)    The owner first shall have demanded and allowed reasonable time for the board to pursue such enforcement; or

---

[10]/  (...continued)
Kai, Inc. v. Stillson, 108 Hawaiʻi 2, 9, 116 P.3d 644, 651 (2005)); see also Bruno v. Ass'n of Apt. Owners of Waikiki Marina Condominium, No. CAAP-13-0000510, 2019 WL 1552362, at *4 (Haw. App. Apr. 10, 2019) (mem.) ("A condominium declaration and its amendments form a contract between the unit owners and the association created under the statutory framework of [HRS] Chapter 514A & 514B.").

> (2) The owner demonstrates to the satisfaction of the court that a demand for enforcement made to the board would have been fruitless.
>
> If any claim by an owner is not substantiated in any court action against an association, any of its officers or directors, or its board to enforce any provision of the declaration, bylaws, house rules, or this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an association shall be awarded to the association, unless before filing the action in court the owner has first submitted the claim to mediation, or to arbitration under subpart D, and made a good faith effort to resolve the dispute under any of those procedures.

Further, HRS § 514B-10(a) states in part:

> **Remedies to be liberally administered**. (a) The remedies provided by this chapter shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed.

Pendleton sought attorney's fees and costs pursuant to HRS § 514B-157(a) and DCRCP Rule 54. The District Court awarded Pendleton reduced attorney's fees under HRS § 514B-157 without specifying the applicable subsection. The court also awarded Pendleton her costs.[11]

On appeal, AOAO argues in part that HRS § 514B-157(b) "applies to a 'claim by an owner . . . in any action against an association[,]'" and because Pendleton sought only monetary damages in her Complaint, and not to enforce any provision of AOAO's declarations, by-laws, or house rules, any claim for attorney's fees by Pendleton under subsection (b) was foreclosed by the supreme court's decision in Schmidt v. Bd. of Dirs. of the Ass'n of Apt. Owners of the Marco Polo Apts., 73 Haw. 526, 836 P.2d 479 (1992).[12]

---

[11] The District Court did not state whether it awarded costs under HRS § 514B-157(a) or DCRCP Rule 54.

[12] In Schmidt, the owners of a condominium, the Schmidts, had sued the association, alleging that it breached its duty, pursuant to the declaration and by-laws of the association, to maintain the common areas, resulting in water leakage that caused damage to the Schmidts' unit. 73 Haw. at 528, 836 P.2d at 481. The supreme court held that the Schmidts, who prevailed at trial, were not entitled to attorney's fees under HRS § 514A-94(b), the predecessor to HRS § 514B-157(b) (see infra). Id. at 533, 836 P.2d at 483. The court reasoned:

> [T]he Schmidts did not seek to enforce any *affirmative* action on the part of the [a]ssociation to comply with any provision of the [a]ssociation's declaration, by-laws, house

(continued...)

Pendleton does not dispute AOAO's argument regarding HRS § 514B-157(b).  Rather, she contends that the District Court properly awarded her fees and costs under HRS § 514B-157(a), as follows:

> The plain language of [HRS § 514B-157(a)] states that it applies when the claims upon which the association **takes *any* action** are not substantiated.  Here, [AOAO] fined Pendleton claiming that it had authority to levy fines.  Since the District Court determined that [AOAO] had not complied with the statutory prerequisites to impose a fine, the association's claim was not substantiated, so Pendleton is entitled to "all costs and expenses, including reasonable attorneys' fees, incurred" by Pendleton "as a result of the action of the association."

(Ellipses omitted.)

Indeed, HRS § 514B-157(a) states in relevant part that "if the claims upon which the association takes any action are not substantiated, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to such person or persons by the association."  (Emphasis added.)  AOAO argues, however, that HRS § 514B-157(a) cannot support the fee award to Pendleton because AOAO "did not assert 'claims' against Pendleton, and did not file an 'action' against [her.]"

The terms "claims" and "action" are not defined in HRS § 514B-157.  We thus turn to familiar principles of statutory construction:

---

[12]/  (...continued)
rules, or HRS chapter 514A; rather, in their own words, they were "seeking damages for the [a]ssociation's failure to comply with the By-Laws and Declaration."  . . .  In the absence of any prayer for equitable, mandatory, or injunctive relief to compel obedience to the [a]ssociation's declaration, by-laws, house rules, or any enumerated provision of HRS chapter 514A, HRS § 514A-94(b) does not apply to the Schmidts' actions.

Id. (original brackets and ellipsis omitted.)  HRS § 514A-94 was replaced by HRS § 514B-157 (2006) "with respect to events and circumstances occurring on or after July 1, 2006."  Ass'n of Apt. Owners of Keauhou Kona Surf & Racquet Club, Inc. v. Bowers, No. 29218, 2011 WL 1421147, at *25 n.8 (Haw. App. Apr. 13, 2011) (mem.) (quoting HRS § 514B-22 (2006)).  The statutes are substantially similar.  See id. ("For purposes of our analysis, there are no relevant differences between HRS § 514A-94 and HRS § 514[B]-157 . . . .").

> To effectuate the statute's plain language, its words "must 'be taken in their ordinary and familiar signification, and regard is to be had to their general and popular use.'" See State v. Guyton, 135 Hawaiʻi 372, 378, 351 P.3d 1138, 1144 (2015) (quoting In re Taxes of Johnson, 44 Haw. 519, 530, 356 P.2d 1028, 1034 (1960)); see also HRS § 1-14 (2009). "In conducting a plain meaning analysis, 'this court may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined.'" Guyton, 135 Hawaiʻi at 378, 351 P.3d at 1144 (quoting State v. Pali, 129 Hawaiʻi 363, 370, 300 P.3d 1022, 1029 (2013)).

Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 449–50, 420 P.3d 370, 380–81 (2018).

Webster's defines a "claim" to include "a demand for something as due; an assertion of a right or an alleged right[.]" Webster's Encyclopedic Unabridged Dictionary 379 (1996 ed.); see also Black's Law Dictionary 311 (11th ed. 2019) (defining "claim" to include "[t]he assertion of an existing right" and "[a] demand for money, property, or a legal remedy to which one asserts a right"). The ordinary meaning of "claim" is broad enough to encompass AOAO's assertion of a right to assess and collect fines from Pendleton pursuant to the Fine Policy.

Webster's and Black's also provide multiple definitions of "action." See Webster's Encyclopedic Unabridged Dictionary at 20; Black's Law Dictionary at 37. Black's, for example, defines "action" as "[t]he process of doing something; conduct or behavior[,]" "[a] thing done[,]" or "[a] civil or criminal judicial proceeding." Black's Law Dictionary at 37.

To the extent there is ambiguity in the term "action," we may examine the context in which it appears. See Castro v. Melchor, 142 Hawaiʻi 1, 11, 414 P.3d 53, 63 (2018) ("In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." (quoting Lingle v. Hawaiʻi Gov't Emp. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawaiʻi 178, 183, 111 P.3d 587, 592 (2005))). We may also examine HRS § 514B-157(a) in the context of HRS § 514B-157(b). See Omiya, 142 Hawaiʻi at 449–50, 420 P.3d at 380–81 ("'[L]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be

20

called upon in aid to explain what is doubtful in another.'" (quoting State v. Kamanaʻo, 118 Hawaiʻi 210, 218, 188 P.3d 724, 732 (2008))); see also HRS § 1-16 (2009).

The language at issue in HRS § 514B-157(a) refers broadly to "the claims upon which the association takes <u>any action</u>" (emphasis added), *i.e.*, without imposing any limitation upon the type of "action" taken.  In addition, where the claims upon which the association takes any action are not substantiated, all costs and expenses, including reasonable attorneys' fees, incurred by, for example, a unit owner, "shall be <u>promptly paid on demand</u> to such person or persons by the association."  HRS § 514B-157(a) (emphasis added).  The unit owner is not required under this provision to seek an award of costs and fees in a <u>court</u> action filed by the association (or by the unit owner).

In contrast, HRS § 514B-157(b) concludes with the sentence, "If any claim by an owner is not substantiated in <u>any court action</u> against an association . . . to enforce any provision of the declaration, bylaws, house rules, or this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an association shall be awarded to the association, unless before filing <u>the action in court</u>, the owner . . . ."  (Emphasis added.)  We must presume that the phrases "any action" and "any court action" were intended to have different meanings.  See Trs. of Estate of Bishop v. Au, 146 Hawaiʻi 272, 280, 463 P.3d 929, 937 (2020) ("When the legislature uses different words in a statute . . . the different words are presumed to have different meanings." (citing Agustin v. Dan Ostrow Constr. Co., 64 Haw. 80, 83, 636 P.2d 1348, 1351 (1981))). We must also presume that, had the legislature intended to limit the type of action that can trigger the provisions of HRS § 514B-157(a) to "any court action," it would have done so.  See, e.g., Lanai Co. v. Land Use Comm'n, 105 Hawaiʻi 296, 318, 97 P.3d 372, 394 (2004) ("If the legislature intended to grant the LUC enforcement powers, it could have expressly provided the LUC with such power."); Morgan v. Plan. Dep't, Cnty. of Kauaʻi, 104 Hawaiʻi 173, 179, 86 P.3d 982, 988 (2004) (ruling that if the legislature

had intended to grant the commission injunctive powers, it would have done so expressly).  The context of the term "action" in HRS § 514B-157(a) thus supports the argument that the term means "any action" taken by the association on its applicable claims – not just court action.

The legislative history of HRS § 514B-157(a) does not reflect otherwise.  In <u>Vinson v. Ass'n of Apt. Owners of Sands of Kahana</u>, 130 Hawaiʻi 540, 312 P.3d 1247 (App. 2013), we explained:

> The Legislature enacted HRS § 514B-157 in 2004 as part of a comprehensive recodification of Hawaii's "Condominium Property Regime" Law (which prior to 1988 was referred to as "Horizontal Property Regimes").  <u>See</u> 2004 Haw. Sess. Laws Act 164, §§ 1 at 755, 2 at 795-96; 1988 Haw. Sess. Laws Act 65, § 1 at 98.  The predecessor to HRS § 514B-157 is HRS § 514A-94 (Supp. 1977), which in turn was preceded by HRS § 514-7.5 (1976).  <u>See</u> 1977 Haw. Sess. Laws Act 98, § 2 at 180-81; 1976 Haw. Sess. Laws Act 239, § 1 at 757-58.  The statute has been amended over time, including the adoption of subsection (b) in 1983.  <u>See</u> 1983 Haw. Sess. Laws Act 137, § 1 at 250.

<u>Id.</u> at 548 n.5, 312 P.3d at 1255 n.5.

Thus, the earliest predecessor of HRS § 514B-157(a) was HRS § 514-7.5 (1976), which originated as part of Act 239.[13]  The

---

[13]  Act 239 amended HRS Chapter 514 by adding the following new section, among others:

> Sec. 514-   Attorney's fees and expenses of enforcement.  All costs and expenses, including reasonable attorney's fees, incurred by or on behalf of the association for:
>
> (1)   Collecting any delinquent assessments against any owner's apartment;
>
> (2)   Foreclosing any lien thereon;
>
> (3)   Enforcing any provision of the declaration, bylaws, house rules, and the Horizontal Property Act; or
>
> (4)   The rules and regulations of the real estate commission; against an owner or any occupant of an apartment shall be promptly paid on demand to the association by the apartment owner; provided that if the claims upon which the association takes any action are not substantiated, all costs and expenses, including reasonable attorney's fees, incurred by the apartment owner as a result of the action of the association, shall be promptly paid on demand to the apartment owner by the association.

1976 Haw. Sess. Laws Act 239, § 1 at 757-58.

Senate Committee on Judiciary described the purpose of the new section as follows:

> [to] authorize condominium associations of apartment owners to collect all costs and expenses, including reasonable attorney's fees, in enforcing breaches of covenants of apartment owners and similarly allow apartment owners who are unfairly accused of violating the terms of the declaration, bylaws, etc., the right to recover all costs and expenses, including reasonable attorney's fees, resulting from defending themselves from actions of the association of apartment owners[.]

S. Stand. Comm. Rep. No. 605-76, in 1976 Senate Journal, at 1143; see also S. Stand. Comm. Rep. No. 544-76, in 1976 Senate Journal, at 1120 (Senate Committee on Housing and Hawaiian Homes stating substantially the same purpose).

Based on the plain meaning of the phrase "any action" in HRS § 514B-157(a), as well as its context and purpose, we construe the phrase to mean "any action" taken by the association on its applicable claims. Such action is not limited to court action.

Here, there is no dispute that AOAO assessed $600 in fines to Pendleton's account and collected the fines from Pendleton pursuant to the Fine Policy. On this record, we thus conclude that AOAO took actions on a claim that it had a right to assess and collect such fines pursuant to the Fine Policy. Moreover, in light of the District Court's determination that the Fine Policy did not comply with HRS § 514B-104(a)(11), AOAO's claim was "not substantiated." HRS § 514B-157(a). Accordingly, the District Court did not abuse its discretion in awarding Pendleton attorney's fees — as well as costs to the extent awarded — under HRS § 514B-157, specifically HRS § 514B-157(a).

## V. Conclusion

For the reasons discussed above, we affirm the following judgment and orders entered in the District Court of the First Circuit, Honolulu Division:

(1) the June 12, 2018 Judgment;

(2) the May 21, 2018 "Order Regarding Reduction in Attorney's Fees and Costs Awarded to [Pendleton]";

(3) the April 18, 2018 "Order Granting . . .

23

Pendleton's Motion to Dismiss Without Prejudice Count III of the Complaint Filed August 22, 2016, Filed March 8, 2018";

(4) the January 22, 2018 "Order Granting in Part and Denying in Part . . . Pendleton's Motion for Summary Judgment Filed September 8, 2017"; and

(5) the November 25, 2016 "Order Denying . . . AOAO's Motion for Summary Judgment Filed October 14, 2016."


On the briefs:

John D. Zalewski and
Mark G. Valencia
(Case Lombardi & Pettit
a Law Corporation)
for Defendant-Appellant

David W.H. Chee
for Plaintiff-Appellee

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge